# Richmond

TERMINAL CARS, INCORPORATED V. MILDRED E. WAGNER.

COLUMBUS MANNING V. MILDRED E. WAGNER.

April 27, 1964.

Record Nos. 5738, 5739.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

*L. S. Parsons, Jr.* (*Frederick T. Stant, Jr.; Parsons, Stant & Parsons,* on brief), for plaintiff in error, Terminal Cars, Incorporated.

*E. Pryor Wormington* (*Rixey & Rixey,* on brief), for plaintiff in error, Columbus Manning.

*Savory E. Amato* (*Calvin W. Breit; Amato, Babalas, Breit, Cohen, Rutter & Friedman,* on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Mildred E. Wagner, while riding as a passenger in a taxicab owned by Terminal Cars, Incorporated, and driven by its employee, Ernest W. Nichols, was thrown from the seat and injured when the driver brought the vehicle to a sudden stop in the effort to avoid a collision with a truck driven by Columbus Manning. To recover damages for her injuries Mrs. Wagner filed a motion for judgment against Terminal Cars, Incorporated, Nichols and Manning. Nichols died before the trial and the case against him was revived in the name of the administrator of his estate. The plaintiff has recovered a verdict and judgment in the sum of $6,000 against Terminal Cars, Incorporated, Nichols' administrator and Manning.

Based on the same record, Terminal Cars, Incorporated, and Manning filed separate petitions for writs of error which were granted. No petition was filed on behalf of Nichols' administrator.

Neither Terminal Cars nor Manning questions the sufficiency of the evidence to sustain the verdict, but each assigns error to the rulings of the trial court on certain instructions.

The evidence is without serious conflict. About 2:00 P. M. on March 24, 1962, the plaintiff engaged a taxicab to carry her from downtown to her residence on Gates avenue in the city of Norfolk. On his chosen route the driver proceeded westwardly along Olney Road, thence northwardly along Llewellyn avenue toward Princess Anne Road where he intended to make a left turn and proceed westwardly.

Llewellyn avenue is a one-way street designed for northbound traffic with two lanes separated by a solid white line on the pavement. As the taxicab approached the intersection of Llewellyn and Franklin avenues, Manning, driving a truck eastwardly along Franklin avenue, came into Llewellyn avenue, made a left turn, and proceeded northwardly along the latter street ahead of the taxicab which was going in the same direction. It was Manning's intention to make a left turn from Llewellyn avenue into Westover avenue which is one short block north of Franklin avenue. As Manning was beginning to execute his left turn off of Llewellyn avenue the taxicab driver undertook to pass the truck on its left. When the cab driver

observed that passing in this manner and under these conditions might result in a collision he blew his horn, applied his brakes, cut his cab to the left, and brought it to a sudden stop with its front wheels against the left curb. Because of the sudden stop the plaintiff was thrown from the seat of the taxicab and injured.

Manning, the truck driver, testified that before entering Llewellyn avenue from Franklin avenue he looked to his right, that is, the direction from which the taxicab later came, and although he had a clear view for two blocks he saw no traffic approaching. He made a left turn into Llewellyn avenue and headed north in the right-hand northbound lane. He said that because of the presence of cars parked on Westover avenue it was necessary for him to make a wide left turn into the street, and for that reason he directed his vehicle into the right-hand lane on Llewellyn avenue. When he had proceeded about one-half of the distance between Franklin and Westover avenues he put on his mechanical signal, indicating his intention to make a left turn, and proceeded into the left-hand northbound lane on Llewellyn avenue. Before doing this, he said, he looked into his rear-view mirror and saw no vehicle behind him. As he was about to execute the left turn into Westover avenue he heard the horn and brakes of the taxicab and saw the latter vehicle which had come to a stop about four or five feet to the rear of the truck. Before that time he had not seen the taxicab and was unaware that it was following his vehicle.

While the enclosed body of the truck prevented the use of an inside rear-view mirror the vehicle was equipped with an outside one. Manning testified that this latter mirror was in good condition and that "you can see perfect" with it except when a following vehicle is close to the "tail end" of the truck, in which event it is not visible to the driver.

As has been said, Nichols, the taxicab driver, died before the trial. However, a statement recorded about a month after the accident, giving his version of it, was read in evidence. According to this statement, Nichols said that as he drove northwardly along Llewellyn avenue he "saw the truck all the time" ahead of him, but did not know that it was going to make a left turn. He further said that when the driver of the truck attempted to make a left turn ahead of him he (Nichols) had to bring his taxicab to a sudden stop in order to avoid a collision. When asked whether the truck driver gave any

signal of his intended left turn Nichols' answer was, "If he gave any signal whatsoever, I did not see them."

The plaintiff testified that she did not see the truck until after she had been thrown from the seat by the sudden stopping of the taxicab. She said that she had been driving for eighteen years and from her experience estimated that prior to the accident the taxicab was proceeding along Llewellyn avenue at "around 30 miles an hour." The permitted speed limit along there, she said, was 25 miles an hour.

█ Terminal assigns error to the granting of eight instructions, four of which were tendered by counsel for the plaintiff and four by counsel for Manning.

Instruction P-1, offered by the plaintiff, told the jury that if they found from the evidence that the operator of the taxicab was driving in excess of the speed limit then he was guilty of negligence. Instruction X, offered by Manning, told the jury that it was the duty of the driver of the taxicab to exercise the highest degree of care to refrain from operating his vehicle "at a speed no greater than that which was reasonable and proper under the circumstances." These instructions were objected to by Terminal on the ground that there was no "competent evidence" of excessive speed by its driver. We hold that the related testimony of the plaintiff, that the taxicab was being driven in excess of the speed limit, was sufficient to support the instructions.

█ Instruction P-2, offered by the plaintiff, and Instruction V, offered by Manning, told the jury that it was the duty of the driver of the taxicab "to exercise the highest degree of care" to keep a proper lookout and to keep his vehicle under proper control. Terminal objected to these instructions on the ground that there was no evidence that the driver of the taxicab failed to keep a proper lookout or failed to keep his vehicle under proper control. Neither objection was well taken. One of the main issues in the case was whether Manning gave a signal of his intended turn, and if so, whether the taxicab driver saw, or should have seen, the signal. If the signal was given, as Manning says, then the admitted failure of the taxicab driver to see it and his failure to observe that the truck was beginning to turn ahead of him, would justify the jury in finding that he was not keeping a proper lookout. The fact that the driver of the taxicab, in order to avoid a collision, brought his vehicle to a stop so suddenly that the plaintiff passenger was thrown from the seat and injured

would justify the jury in finding that he did not have his vehicle under proper control.

In Instruction P-7, offered by the plaintiff, the jury were told that Terminal "owed the plaintiff the utmost care, diligence and foresight in the operation and management of the vehicle." Terminal's objection to this instruction was that "it repeats and emphasizes" the language of Instruction P-2, *supra*. This objection was not well taken. Instruction P-7 stated the duty of Terminal as a common carrier to its passenger. Instruction P-2, *supra*, dealt with particular duties which were required of the taxicab driver in the operation of his vehicle, that is, proper control, proper lookout, and driving at a reasonable speed.

At the request of the plaintiff the trial court granted Instruction P-8 which reads as follows:

"The court instructs the jury that if you believe from a preponderance of the evidence in this case that the combined slight negligence of the taxicab driver, E. W. Nichols, and the ordinary negligence of the defendant, Columbus Manning, efficiently contributed to cause the accident, then your verdict shall be for the plaintiff against all defendants."

Terminal objected that this instruction was improper in "attempting to apportion degrees of negligence" between that of the taxicab driver and that of the truck driver. This objection was not well taken. The purpose of the instruction was to tell the jury that the taxicab driver and the truck driver owed the plaintiff different degrees of care; that the taxicab driver was liable for "slight negligence" and the truck driver for "ordinary negligence." It did not attempt to apportion the degrees of negligence of the parties.

But neither Terminal nor the co-defendant, Manning, brought to the attention of the trial court that the instruction failed to submit to the jury for their determination whether the taxicab driver was guilty of "slight negligence" and the co-defendant truck driver of "ordinary negligence," and whether the negligence of both proximately caused the accident. As phrased, the instruction assumed that both were guilty of such degrees of negligence and merely left to the jury to determine whether such "combined" negligence "efficiently contributed to cause the accident." Since Terminal as well as the co-defendant, Manning, failed to bring to the attention of the trial court this error in the instruction it will not be considered on appeal. Rule 1:8.

On the whole we find no well-taken exceptions to the instructions of which Terminal complains and no error prejudicial to it in the proceedings in the trial court. Consequently the judgment in favor of the plaintiff against this defendant is affirmed.

■ We turn next to Manning's objections to the lower court's rulings on the instructions.

At the request of the plaintiff the trial court granted Instruction P-3, the pertinent portion of which reads as follows:

"The court instructs the jury that every driver of a motor vehicle who intends to turn, or partly turn, from a direct line of travel, * * * shall give a signal plainly visible to the driver of such other vehicle of his intention to make such movement. And if you believe from the evidence that the defendant, Columbus Manning, violated the foregoing duties, then you shall find the defendant, Columbus Manning, guilty of negligence."

At the request of the co-defendant Terminal the court granted Instruction B, which stated in substantially the same language the duty of a driver with respect to giving a signal of his intention to turn.

The substance of Manning's objection to these instructions was that since he had testified that the proper signal was given, the statement of Nichols that he had not seen the signal was negative and insufficient to support a finding that the signal was not in fact given. The objection was not well taken. While Manning did say that before beginning his turn he "pulled on my signal," he did not say, nor did any other witness testify, that the signal was operating properly or was "plainly visible" to the driver of such other vehicle.

■ Instruction P-5 was granted at the request of the plaintiff. It reads as follows:

"The court instructs the jury that the law of Virginia requires that every person who operates a motor vehicle on the highway shall have such motor vehicle equipped with a mirror so located as to reflect to the operator a view of the highway for a distance of not less than two hundred (200) feet to the rear of such vehicle, and if you believe from a preponderance of the evidence in this case that the defendant, Columbus Manning, violated this duty, then you shall find him guilty of negligence."

At the request of the co-defendant Terminal the court granted Instruction C, which is substantially in the same language.

Manning objected to both of these instructions on the ground that

the testimony on his behalf showed that the truck was properly equipped with a rear-view mirror, and that there was no evidence to the contrary. In further objecting to these instructions, it was pointed out that the issue with respect to the rear-view mirror was not whether the truck was properly equipped with one, but whether the truck driver had exercised a "proper lookout through the use of the mirror."

We agree that these objections were well taken and that the instructions should not have been granted. While there was ample evidence to support an instruction to determine whether Manning was exercising a proper lookout through the use of the mirror, there was no evidence that the equipment itself was insufficient to reflect to the operator a view of the highway for the required distance. Manning testified that the mirror was in good condition, that it afforded "perfect vision," and there was no evidence to the contrary. His only qualification was that a driver was unable to see a vehicle close to the "tail end" of the truck.

At the request of the co-defendant Terminal the court granted Instruction E which reads as follows:

"The court instructs the jury that whenever any highway has been divided into clearly marked lanes for traffic, a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver of such vehicle in the exercise of reasonable care first ascertains that such movement can be made with safety. And if you believe from the evidence that the highway in this case was so marked and that the defendant, Columbus Manning, violated the foregoing duty and that such violation was the sole proximate cause of the collision, then you shall return your verdict solely against the defendant, Columbus Manning."

Manning objected to this instruction on the ground that an issue in the case was whether he made a proper or improper turn at the intersection and not whether he shifted from one lane to another without exercising reasonable care to see that he could do so with safety. However, his own testimony shows that this objection is not well taken. As has been said, he testified that when he had proceeded about one-half of the distance between Franklin and Westover avenues, he shifted his course from the right-hand to the left-hand northbound lane on Llewellyn avenue and that before doing this he looked into his rear-view mirror and saw no vehicle behind him. The physical facts show that at this time the taxicab was follow-

ing the truck. Consequently, it was for the jury to say whether, in the exercise of reasonable care, Manning should have seen that the taxicab was too close for him to have made this movement in safety. Hence the instruction was properly granted.

For the error of the trial court in granting Instruction P-5 and Instruction C, the judgment of the plaintiff against the defendant, Columbus Manning, is reversed, the verdict set aside, and the case remanded for a new trial as to him.

Record No. 5738—*Judgment affirmed.*

Record No. 5739—*Judgment reversed and remanded.*