# Richmond

## THE CHESAPEAKE AND POTOMAC TELEPHONE COMPANY OF VIRGINIA v. JAMES S. BULLOCK, ET AL.

March 13, 1944.

Record No. 2748.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*John S. Eggleston* and *William H. King*,. for the plaintiff in error.

*Peyton, Beverley, Scott & Randolph,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

James S. Bullock, the plaintiff below, an employee of Enterprise Electric Company of Baltimore, fell from a pole which was jointly occupied by that company and the defendant, the Chesapeake and Potomac Telephone Company, and was injured. He recovered a verdict and judgment against the Chesapeake and Potomac Telephone Company.

The Enterprise Electric Company will be referred to as "the Electric Company", the Chesapeake and Potomac Telephone Company as "the defendant", and James S. Bullock as "the plaintiff".

The Electric Company, acting under a contract between it and the United States, erected a series of poles, which were owned by the United States, along a roadway at the Army Air Base in Henrico County, Virginia. This company placed on each of the poles cross-arms, and on these they erected high tension wires and other electrical equipment. The United States arranged with the defendant to install a telephone cable on the same poles below the electric system.

The defendant, on the afternoon before the accident, had run a messenger strand for some 4,000 feet along the entire series of poles which had been erected by the Electric Com-

pany. The messenger strand is a steel rope which is strung along the poles for the purpose of supporting a lead-covered telephone cable. The cable is attached to and under the strand by wire rings. The strand is affixed to each pole by means of a bolt, and attached by a clamp—the bolt running through the pole. The clamp is to secure the strand permanently to the pole. Before the strand can be clamped to the pole it must be stretched to such an extent that it will properly support the cable. On the afternoon before the accident the defendant had stretched the strand for the entire 4,000 feet, and it rested on the bolts on the poles, but it had not been clamped to the poles.

At about 3:45 P. M. on that afternoon, the working force of the defendant left this particular work and went to another point in the air base to finish up some work there. Quitting time arrived before the workmen could return to their work on the poles, and the messenger strand remained unfastened, resting on the bolts on the poles.

The next morning, sometime after 8:00 o'clock, the plaintiff, who was employed as a lineman for the Electric Company, climbed the pole in question in order to attach a guy wire to properly support the pole. After making the attachment, he descended the pole. He testified that when descending he reached the messenger strand and the toe of his boot hit it and it rolled off the bolt, deflecting the spur of his boot from the pole, throwing him off balance, and causing him to fall. He also testified that if the messenger strand had been permanently fastened and clamped to the pole it would not have rolled off the bolt, the spur would have caught in the pole and he would not have fallen. He said he had been instructed "not to mess with the Telephone Company's wires." The testimony discloses that the linemen of the Electric Company had been cautioned to avoid any equipment or foreign wires that might be on the poles.

The allegation of negligence in the notice of motion is as follows:

"I do here allege that the said wire or cable was negligently, carelessly and recklessly owned, constructed and

maintained by you and that while I was descending the said pole at the time and place aforesaid, and while I was exercising due care on my part, my foot came in contact with said wire or cable which was negligently, carelessly and recklessly constructed, operated and maintained by you, and as a direct and proximate result of your negligence, carelessness and recklessness as aforesaid, I fell and was thrown to the ground and as a direct and proximate result thereof I was permanently and seriously damaged and injured, physically and mentally, internally and externally, suffering lacerations and permanent injuries about various parts of my body and particularly a fracture of my right arm."

As already indicated, the poles were owned by the United States but were jointly occupied by the Electric Company and the defendant. The construction of the telephone line had not been completed. The lead-covered telephone cable had not been attached to the messenger strand, and the messenger strand, as previously stated, had not been clamped to the poles.

Assignments of error challenge the right of the plaintiff to recover for the alleged reason that the defendant was not guilty of negligence. The defendant also claims that the plaintiff was guilty of contributory negligence which bars his recovery, and that the instructions given by the court were inapplicable, confusing and incorrect.

It must be borne in mind that the plaintiff was not injured by coming in contact with wires which transmitted electricity. For this reason, the cases referred to by his counsel in the brief, arising as a result of injury or death from electric shock, are not authority here. A different principle applies where a dangerous instrumentality, such as electricity, is involved. A company transmitting electricity of high voltage is required to exercise a high degree of care not to injure others. *Jeffress* v. *Virginia Ry., etc., Co.,* 127 Va. 694, 104 S. E. 393.

The messenger strand was not a dangerous instrumentality. It constituted no obstacle to one's use of the pole. The fact that the telephone line had not been completed,

was bound to have been obvious to the plaintiff, for a mere glance would have given him information that the leaded telephone cable had not been attached to the strand. When he ascended the pole he came within six inches of the strand, and the fact that the strand had not been clamped to the pole and the cable had not been attached must again have been apparent to him.

Where a pole is subject to joint occupancy, as was the one here involved, each company, in its use of the pole, owes the duty of ordinary care to. the employees of the other. 29 C. J. S., Electricity, sec. 57, p. 614; 18 Am. Jur., Electricity, sec. 65, p. 459. See annotation 45 L. R. A. (N. S.) 303, and 81 A. L. R. 415. But the fact that the plaintiff was an invitee to use the pole gave him no invitation to use the messenger strand, and unless he was an invitee of the defendant to use the messenger strand, he cannot recover. There was no such invitation. The case nearest in point on the facts is *New York, etc., Tel. Co.* v. *Speicher,* (1898) 59 N. J. L. 23, 39 A. 661, and affirmed without opinion in *Speicher* v. *New York, etc., Tel. Co.,* 60 N. J. L. 242, 41 A. 1116. There the plaintiff, an employee of the city, was working on wires of the city on a joint occupancy pole which was also used to carry the lines of the telephone company. When he descended the pole he took hold of a crossbar of the telephone company and it gave way, causing him to fall and injure himself. The court held that even if the plaintiff was an invitee of the defendant to mount and descend the pole in discharging his duties to the city, the telephone company owed him no duty in respect to the crossbars, since the sole object of them was to carry the wires, and not to support linemen.

But here it is insisted that the plaintiff contacted the strand unintentionally, and that if the strand had been fastened to the pole it would not have given way, causing him to lose his balance. It makes no difference whether he struck the strand intentionally or unintentionally. That is not the test. The test is whether the defendant owed the plaintiff the duty to have the strand fastened to the pole.

■ The plaintiff grounds his entire case upon the single proposition that the defendant committed an act of actionable negligence in permitting the strand to remain unattached to the pole, and he introduced testimony tending to show that this failure was negligence. But the position of the plaintiff requires the assumption that the defendant owed the plaintiff a duty to have the strand fastened to the pole. There are two questions to be determined here—first, did the defendant owe the plaintiff a legal duty; and secondly, has the defendant breached that duty. The first question is one of law for the court, and, until it is decided that a legal duty exists, the second question, which is one for the jury, is never reached. Shearman and Redfield on Negligence, Vol. I, sec. 40.

The plaintiff assumed the existence of the duty without any support for the assumption, and then he attempted to prove its breach by testimony.

The messenger strand was devoted solely to bearing the weight of the telephone cable. It was not for the purpose of supporting linemen who might ascend or descend the pole, and the defendant was under no duty to maintain the strand for that purpose. In fact, as we have already seen, the linemen, including the plaintiff, and those employed by the defendant company, had been specifically instructed not to use the strand in ascending or descending the poles. Of course, the plaintiff had the right to ascend and descend the pole. It was his place of work. The plaintiff was an invitee of the defendant in using the pole to perform his work, because it was one of joint occupancy, but that was the extent and limit of the invitation. He was not invited to use the messenger strand for any purpose. The defendant had given him no authority, either express or implied, to use it. He was instructed not to use it.

It follows that the other assignments of error need not be considered because there can be no liability in this case in any event. The judgment is reversed and final judgment is now entered for the defendant.

*Reversed and final judgment.*