WILLIAM R. DUDLEY, ADMINISTRATOR, ETC.

V.

OFFENDER AID AND RESTORATION OF RICHMOND, INC.

Record No. 900994

March 1, 1991

Present: All the Justices

*Michael C. Allen (F. G. Rockwell, III; Hairfield, Morton, Allen & Rockwell,* on briefs), for appellant.
*James W. Hopper (Warren H. Britt; Parvin, Wilson, Barnett & Hopper,* on brief), for appellee.

JUSTICE RUSSELL delivered the opinion of the Court.

A convicted felon serving a penitentiary sentence was permitted to reside in a privately-operated "halfway house." While there, he left the premises of the "halfway house," broke and entered the residence of a woman, raped her, and strangled her to death. Her administrator brought this action at law against the operator of the "halfway house," alleging that the decedent's death resulted from the negligence of the operator in failing to exercise reasonable care to control the felon.

The trial court sustained a demurrer and dismissed the case. We awarded the administrator an appeal. The sole question on appeal is whether the operator of the "halfway house" had the duty to exercise reasonable care to control the felon so as to prevent him from causing harm to the decedent. We answer the question in the affirmative. Because the case comes to us on demurrer, the facts and the inferences reasonably drawn from them will be

taken as true. They will be summarized as set forth in the motion for judgment.

Timothy Wilson Spencer was 25 years old in 1987. His criminal career began at the age of nine, when he was charged with larceny and setting fire to a school. He was charged with larceny again at age 11, and burglary at age 14. At age 15, he was committed to a juvenile correctional center. Released on supervision the following year, he was again arrested within eight months on burglary charges. He was committed to the Beaumont Learning Center. One year after his release from that confinement, he was sentenced as an adult to five years in the Virginia State Penitentiary for another burglary. He was released on mandatory parole on December 14, 1981, after serving six months in prison. Within a month, he was arrested on three new charges. His parole was revoked and he was returned to custody.

Spencer was again released on parole in May 1983, but in January 1984 was again arrested on two additional burglary charges. In 1986 and again in 1987, the parole board denied him parole because his recidivism indicated that he was an "unacceptable parole risk." His mandatory release date was not to be until 1991.

While in custody, Spencer was evaluated by psychologists as "a potential disciplinary and security problem." They characterized him as "lazy, greedy, self-indulgent, directionless, uncooperative, and unreliable unless adequately supervised." On one occasion, Spencer participated with a group of other prisoners in a vicious beating of two newly incarcerated inmates, who were threatened with forcible homosexual rape if they reported the beatings. On two other occasions, Spencer set, or attempted to set, fires in the penitentiary.

Offender Aid and Restoration of Richmond, Inc., a Virginia corporation (OAR), owned and operated a residential pre-release facility, known as the "Hospitality House," at 1500-1502 Porter Street, in Richmond. The facility was intended to acclimate and prepare convicts for eventual release from prison to free society. OAR had a contract with the Virginia Department of Corrections which provided that OAR would receive inmates from penal institutions who met certain criteria: mandatory parolees, revoked parolees with less than six months remaining to serve, and inmates granted parole. Inmates who demonstrated a pattern of violence were ineligible. Despite the fact that Spencer met none of these

contractual criteria, he was received by OAR on September 4, 1987, and moved into the "Hospitality House."

The motion for judgment alleges that the "Hospitality House" was filthy and ill-kept and that the residents were essentially unsupervised. Three of the four supervising personnel were themselves convicted criminals having histories which included prostitution, burglary, and malicious wounding. Security measures were practically nonexistent. The alarm system was easily disabled by the inmates, permitting them to enter and leave freely during the night. Windows were unsecured. Spencer's room had a window opening onto a fire escape which gave him unrestricted access to the ground outside. Alcohol and drugs were commonly used in the building. Inmates were permitted to leave during the day, and a log was maintained in which they were to "sign out" and "sign in" so that the supervisory personnel could monitor their whereabouts. In practice, the system was not enforced.

On September 19, 1987, Spencer was counted present in the "Hospitality House" during a "head count" at 3:50 p.m. During a later "head count" between 7:00 and 8:00 p.m., he was unaccounted for. At some time during that night, Spencer broke open a kitchen window in the apartment of Debbie Dudley Davis at 4520 Devonshire Road. That address is a short distance from the "Hospitality House," both being in that part of the City of Richmond which lies south of the James River. He entered the apartment, bound Debbie Davis, beat and raped her, and murdered her by strangulation.*

Spencer returned to the "Hospitality House" at approximately 12:30 a.m. Despite his failure to "sign out" when he left, he "signed in" on his return, noting that he was "late." Notwithstanding his unauthorized departure and unexplained absence, the personnel of OAR made no inquiry into his activities.

OAR's contract with the Department of Corrections required OAR to notify the Department whenever an inmate at the "Hos-

---

* Spencer was convicted of capital murder for this offense and was sentenced to death. We affirmed the conviction and death sentence. *Spencer v. Commonwealth*, 238 Va. 295, 384 S.E.2d 785 (1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1171 (1990). He has also been sentenced to death for three other, unrelated but strikingly similar crimes. All convictions have been affirmed on appeal. *Spencer v. Commonwealth*, 238 Va. 275, 384 S.E.2d 775 (1989), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 759 (1990); *Spencer v. Commonwealth*, 238 Va. 563, 385 S.E.2d 850 (1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1171 (1990); *Spencer v. Commonwealth*, 240 Va. 78, 393 S.E.2d 609, *cert. denied*, 498 U.S. ___, 111 S.Ct. 281 (1990).

pitality House" was absent without authorization for a period of two hours or more. Spencer, like other inmates, sometimes spent entire nights at large without authorization. An employee of OAR sometimes lent Spencer the use of his personal automobile. These violations of the rules went unreported.

William R. Dudley, Administrator of the Estate of Debbie Dudley Davis, brought this action against OAR to recover compensatory and punitive damages for both the non-fatal and fatal personal injuries suffered by Debbie Davis at Spencer's hands, contending that those causes of action survived her death. He alleged that OAR had a duty to exercise reasonable care in its supervision of Spencer for the protection of innocent members of the public, including the decedent, and that the injuries she suffered were the proximate result of OAR's breach of that duty. The Administrator's prayer for punitive damages is based upon an allegation that OAR's conduct "evidenced a conscious, willful, wanton, and reckless disregard for the rights of innocent members of the community."

OAR demurred on the ground that it had no "special relationship" with Debbie Dudley Davis and, therefore, owed her no actionable duty to control Spencer. After considering extensive briefs and arguments of counsel, the court sustained the demurrer by order entered March 28, 1990.

The trial court's decision was based upon its reading of our decisions in *Fox* v. *Custis*, 236 Va. 69, 372 S.E.2d 373 (1988), and *Marshall* v. *Winston*, 239 Va. 315, 389 S.E.2d 902 (1990). In *Fox*, three plaintiffs brought actions against Virginia parole officers for personal injuries and property damage caused by a parolee under the officers' supervision. The trial court sustained demurrers, and we affirmed. We adopted the principles expressed in the Restatement (Second) of Torts § 319 (1965), and held that they were controlling. *Id.* at 75, 372 S.E.2d at 376. That section provides: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

In *Fox*, the parolee had been released from incarceration and was free to conduct his normal affairs in the community subject to parole supervision. The parole officers had only the statutory duty to "supervise and assist" him. Therefore, we held that the parole officers did not "take charge of" the parolee within the

meaning of Restatement § 319. *Fox*, 236 Va. at 75, 372 S.E.2d at 376.

Because the parole officers had no duty to the plaintiffs imposed by Restatement § 319 principles, the general rule, expressed in Restatement § 315, applied. Under the general rule, there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another, unless a "special relation" exists between the defendant and the third person, or between the defendant and the plaintiff. We have applied the general rule in *Wright* v. *Webb*, 234 Va. 527, 530, 362 S.E.2d 919, 920-21 (1987), *Klingbeil Management Group Co.* v. *Vito*, 233 Va. 445, 447-48, 357 S.E.2d 200, 201 (1987), and *Gulf Reston, Inc.* v. *Rogers*, 215 Va. 155, 158, 207 S.E.2d 841, 844 (1974). Because the general rule applied in *Fox*, and because no "special relation" was alleged, we affirmed the dismissal of the plaintiffs' actions on demurrer.

The present case differs from *Fox* in two crucial respects. Spencer, unlike the parolee in *Fox*, had not served his period of confinement and had not been released into the community subject only to the "supervision and assistance" of parole officers. Rather, Spencer was a felon committed to the penitentiary and actively serving a sentence. His mandatory release date was four years in the future. He had been denied parole. He was, when received by OAR, in the custody of the Department of Corrections. Anyone assuming that custody from the Department necessarily became "[o]ne who takes charge" of Spencer within the meaning of Restatement § 319. Furthermore, OAR, under its contract with the Department of Corrections, undertook a responsibility for very close and continuous supervision of its inmates. That responsibility differed substantially, both in degree and in kind, from the duties imposed upon the parole officers in *Fox*. As noted above, OAR was required to maintain stringent security measures and sign-out procedures, and to report to the Department of Corrections any unauthorized absence of an inmate in excess of two hours. The custodial duties of OAR far surpassed those of a parole officer and met the criterion of Restatement § 319 for "one who takes charge" of its inmates. For those reasons, § 319, and not the general rule, applies to this case. *Fox*, therefore, is inapposite.

In *Marshall* v. *Winston*, a sheriff and his chief jailer negligently released a dangerous prisoner from jail. The prisoner committed a

murder while at large and the victim's widow sued the sheriff and the jailer for negligence. As in *Fox*, we affirmed the trial court's dismissal of the case on demurrer. Our holding rested upon two grounds.

First, the motion for judgment failed to allege any facts from which it could reasonably be inferred that the defendants knew, or should have known, that the prisoner "would likely cause bodily harm to others if he were not controlled." The lack of such an allegation was fatal to a claim based upon Restatement § 319. *Marshall*, 239 Va. at 319, 389 S.E.2d at 904-05.

■ Second, the defendants in *Marshall* were public officials. With respect to public officials, we adopted a view expressed by courts in several sister states: In negligence claims against such officials, civil liability will arise only from a violation of a "special duty owed to a specific identifiable person or class of persons." *Id.*, 389 S.E.2d at 905 (citation omitted). We observed that it would not be in society's best interest to impose liability upon a public official for the violation of his public duty to the citizenry at large, because to do so would expose him to litigation from all his official acts. *Id.*

■ In the present case, the factual allegations are more than sufficient to support the inference that OAR knew, or should have known, that Spencer was "likely to cause bodily harm to others" unless controlled. Further, the defendant in the present case is not alleged to be a public official. For both reasons, *Marshall* is inapposite.

OAR argues that even if this case is governed by the principles of Restatement § 319, the plaintiff has failed to allege facts which would bring Debbie Dudley Davis within the class of those to whom OAR owed a duty. OAR contends that if those principles imposed a duty upon it, that duty "must be linked to some specific person or class of discernible victims." OAR quotes a seminal English case as follows:

> The question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence . . . A man is entitled to be as negligent as he pleases towards the whole world if he owes no duty to them.

*Le Lievre* v. *Gould*, 1 Q.B. 491, 497 (1893).

■ Similar views are expressed in *Palsgraf* v. *Long Island R. R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), and have been set forth by many treatises, *e.g.*, F. Harper, F. James, Jr., O. Gray, The Law of Torts § 18.2 (2d ed. 1986); Prosser and Keeton on The Law of Torts § 53 (5th ed. 1984). They have also been applied in our cases, *e.g., Marshall*, 239 Va. at 319, 389 S.E.2d at 905; *Kent* v. *Miller*, 167 Va. 422, 425-26, 189 S.E. 332, 334 (1937). We continue to adhere to them. "[T]here is no such thing as negligence in the abstract, or in general . . . . Negligence must be in relation to some person." *Marshall*, 239 Va. at 319, 389 S.E.2d at 905 (quoting *Kent*, 167 Va. at 425-26, 189 S.E. at 334).

The Restatement expresses that familiar principle of negligence law as follows:

The actor is liable for an invasion of an interest of another, if:

(b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included . . . .

Restatement (Second) of Torts § 281. The Restatement's comment on clause (b), above, is instructive:

In order for the actor to be negligent with respect to the other, his conduct must create a recognizable risk of harm to the other individually, or *to a class of persons — as, for example, all persons within a given area of danger —* of which the other is a member.

(Emphasis added.)

■ That interpretation makes clear that the duty imposed by the principles expressed in Restatement § 319 is not a duty to the world at large and that its breach does not constitute mere "negligence in the abstract." The scope of the duty will vary with the circumstances of each case, but it is always a duty owed to a discernible individual, or to a class of which that individual is a member.

It is conceivable, in a hypothetical situation, that a person of whom the defendant "takes charge" would be dangerous only to an identifiable individual. In such a case, the defendant's duty under Restatement § 319 would run only to that individual be-

cause the risk of injury from a breach of the duty would be foreseeable only as to that prospective victim.

■ More commonly, however, a person "likely to cause bodily harm to others if not controlled," in the language of Restatement § 319, is a potential threat to all who come within his reach. In those circumstances, "[o]ne who takes charge" of such a dangerous person incurs a § 319 duty to an entire class of prospective victims: those who are directly and foreseeably exposed to the risk of bodily harm as a result of the defendant's failure to control his dangerous charge. Frequently, the circumstances will be such as to include within the class "all persons within a given area of danger," in the words of the comment on Restatement § 281(b).

■ The scope of the defendant's duty is commensurate with the scope of the risk created by its breach. In every case, it is for the court to determine, as a question of law, from all the circumstances, if it is controverted, whether the plaintiff falls within the class of those to whom the defendant owes a duty. If that question is answered affirmatively, it is for the jury, properly instructed, to determine as an issue of fact whether the defendant breached the duty. *Chesapeake, Etc., Tel. Co. v. Bullock*, 182 Va. 440, 445, 29 S.E.2d 228, 230 (1944).

The circumstances of the particular case must guide the court in determining the scope of a defendant's duty. If a dangerous prisoner escapes custody, penniless and on foot, in a remote, unpopulated area, and is soon recaptured, the class of potential victims foreseeably at risk during the time of his escape may be very small indeed. By contrast, if a dangerous prisoner is allowed, by a defendant's negligence, to run at large in a city throughout the nighttime hours, the class of potential victims at risk may extend to all who are present within the area to which the prisoner will foreseeably have access during the period of his freedom.

■ Applying those principles to the present case, we hold that Debbie Dudley Davis, although not foreseeably at risk as an individual, was a member of a class consisting of those persons "within a given area of danger" — that is, the area foreseeably accessible to Spencer during his hours at large on the streets of Richmond on the night of September 19, 1987, as a result of OAR's negligent failure to control him.

■ Because OAR is not a public official, as were the defendants in *Marshall*, we are not here concerned with the policy considerations which led us to limit the duty of such officials to a

"special duty owed to a specific identifiable person or class of persons." *Marshall*, 239 Va. at 319, 389 S.E.2d at 905. We think that the interests of society are more appropriately balanced against the interests of private parties who, for hire, take charge of dangerous felons, by the Restatement's "area of danger" test applied above.

Because the trial court erred in sustaining the demurrer, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*