## CIRCUIT COURT OF LOUDOUN COUNTY

Kathy Trammel,
Adm'x of the Estate of
Andre Trammel

v.

Darrett Draughorne et al.

August 16, 1994

Case No. (Law) 14263

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the demurrer of the defendants, National Center on Institutions and Alternatives, Inc., National Center on Institutions and Alternatives, Inc., t/a the Augustus Institute (the "institutional defendants" or "NCIA"), and Jerome G. Miller, to the amended motion for judgment.

For the reasons that follow, the demurrer is sustained.

Under well-established principles, the demurrer admits the truth of all well-pleaded material facts. *Fox v. Custis*, 236 Va. 69 (1988). However, it does not admit the correctness of a pleader's conclusions of law. *Ames v. American National Bank*, 163 Va. 1 (1934).

As pertinent to this ruling, the facts are summarized below as set forth in the amended motion for judgment.

Prior to September, 1990, the defendant, Darrett Draughorne, was within the jurisdiction and purview of the Juvenile and Domestic Relations District Court of Arlington County for, among other things, a conviction of assault and battery which occurred on February 25, 1988, a conviction of destruction of property, a charge of assault and battery which occurred on April 3, 1990, "parol" violations, and theft charges.

As "an alternative to incarceration" on the charge of assault and battery occurring on April 3, 1990, the institutional defendants through Miller offered the Juvenile Court "a residential program which would provide for a supervised residential living unit, evaluation and treatment, and employ-

ment and educational assistance with intensive supervision of [Draughorne] representing to the [Juvenile] Court that such a program would guarantee public safety."

In September or October, 1990, "custody" of Draughorne was granted to NCIA. On or about February 2, 1991, Draughorne was granted a leave by NCIA, "through its agent, servant or employees, and Jerome G. Miller personally." On this date, "while away from the supervised residential setting," Draughorne did negligently, willfully, and wantonly shoot and kill Andre Trammel at a residence located in Loudoun County. Kathy Trammel qualified as the personal representative of the estate of Andre Trammel on February 15, 1991, and filed this suit for wrongful death in this Court on February 1, 1993. Draughorne presently resides in an institution controlled by the Virginia Department of Corrections.

By order entered March 25, 1993, Dayton F. Slater, Jr., was appointed as guardian *ad litem* for Draughorne in this case.

The demurrer states two grounds, but both are inter-connected. They are (1) that the plaintiff has failed to allege that the defendants owed a duty to Andre Trammel and has failed to allege facts to establish a duty by the defendants to control Draughorne and to protect Andre Trammel, and (2) that the plaintiff has not alleged sufficient facts to support her allegation that the defendants should have known that Draughorne would likely cause bodily harm to Andre Trammel if Draughorne was not controlled.

This is a negligence case. There can be no actionable negligence unless there is a legal duty, a violation of the duty, and consequent damages. *Chesapeake and Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61 (1988). The question of whether a duty of care existed on the part of NCIA and Miller to Andre Trammel is a question of law. *Fox v. Custis*, 236 Va. 69, 74 (1988).

The general rule is that a person has no duty to control the conduct of third persons. As stated in *Fox*, this principle is set forth in the Restatement of Torts (Second) § 315 (1965), which provides that no such duty arises unless "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." 236 Va. at 74.

Going further, *Fox* cites § 319 of the Restatement which provides that one "who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty

to exercise reasonable care to control the third person to prevent him from doing such harm."

Therefore, the issue is whether a special relationship existed between the defendants, NCIA and Miller, and the decedent.

The plaintiff argues that the case of *Semler v. Psychiatric Institute of Washington, D.C.*, 538 F.2d 121 (4th Cir.), *cert. denied sub nom., Folliard v. Semler*, 429 U.S. 827 (1976), applies to the facts of this case. I do not feel that it does.

In *Semler*, the wrongdoer's twenty-year sentence was suspended on the condition of his continued confinement and treatment at a psychiatric treatment facility. Clearly, the facility "took charge of" the wrongdoer, and therefore, the duty of care arose. Here the facts alleged do not show that the Juvenile Court intended for Draughorne to be confined or in custody, i.e., NCIA and Jerome Miller were to have taken charge of Draughorne.

Placing Draughorne at NCIA "as an alternative to incarceration" does not necessarily infer that the alternative must be incarceration. If something is "an alternative to incarceration," then it must, by the words used, not be incarceration.

Employment and educational assistance imply that Draughorne would be working or going to school outside of NCIA. There is no allegation that such employment and educational assistance would be provided only on the premises of NCIA. Further, there is no allegation that Draughorne was to have been under constant twenty-four hour control by NCIA.

A representation to the Juvenile Court that the NCIA program would "guarantee public safety" does not, of itself, equate to its taking charge of Draughorne. There is no allegation that the Juvenile Court relied on this representation or required this of NCIA. Further, there are no allegations of exactly what the Juvenile Court ordered for Draughorne. No copy of the Juvenile Court order was made a part of the amended motion for judgment.

Counsel for plaintiff in their memorandum refer to a letter of Miller, but no such letter was referred to in or attached to the amended motion for judgment. Therefore, it cannot be considered on the demurrer.

The plaintiff places great emphasis on the "intensive supervision" of Draughorne by NCIA. The plaintiff also feels that *Dudley v. Offender Aid and Restoration*, 241 Va. 270 (1991), applies to this case. I do not agree because *Dudley* concerned an inmate in the custody of the Virginia Department of Corrections residing at a privately-operated "half-way

house." There is no allegation here that Draughorne was in the custody of the Department of Corrections. Also, I feel that the distinction between the wrongdoer being in confinement and being under supervision is clearly delineated in *Dudley*. 241 Va. at 276. "Intensive supervision" does not raise mere supervision to confinement.

There is no allegation that Draughorne was not permitted to leave NCIA or that the Juvenile Court prohibited it.

The facts as alleged in the amended motion for judgment do not, as a matter of law, support the conclusion that NCIA, the Augustus Institute, and Miller had taken charge of Draughorne. For the special relationship to arise, there must be facts pleaded which support a conclusion that Draughorne was confined by or in the custody of these defendants.

As to the second ground of the demurrer, I am of the opinion that sufficient facts are alleged in the amended motion for judgment to support the conclusion that NCIA and Miller knew or should have known that Draughorne was likely to cause bodily harm to others. At the very least, the allegations raise an issue to be decided by the trier of fact.

Let Ms. DiMatteo submit an order sustaining the demurrer but granting the plaintiff leave to file a second amended motion for judgment on or before September 1, 1994, if she be so advised.