COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges AtLee, Chaney and Frucci
Argued by videoconference


RON BROWN, ET AL.
                                                MEMORANDUM OPINION* BY
v.        Record No. 2158-23-4                  JUDGE STEVEN C. FRUCCI
                                                MAY 27, 2025
LOUDOUN COUNTY, VIRGINIA, ET AL.


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Matthew P. Snow, Judge

Arie M. Jones (Timothy P. Bosson; Isaiah R. Kalinowski; Bosson
Legal Group, PC, on briefs), for appellants.

Nicholas J. Lawrence, Senior Assistant County Attorney, for
appellees Loudoun County, Virginia and Board of Supervisors of
Loudoun County, Virginia.

Kevin B. McCandlish (Jennifer Lee Parrish; Parrish Snead
Franklin Simpson, PLC, on brief), for appellee Gary Clare.


The Circuit Court of Loudoun County sustained two demurrers to Ron and Andrijana

Brown's (the "Browns") complaint for inverse condemnation against Loudoun County and the

Board of Supervisors of Loudoun County (collectively the "County"), and negligence and gross

negligence against Gary Clare. The Browns contend that the circuit court erred in dismissing their

inverse condemnation claim by holding that they were required, and failed, to plead that the County

purposefully took or failed to take an action that intentionally diverted flood water onto the Browns'

property. The Browns also argue that the circuit court erred in ruling that Clare, a county employee,

owed no duty to them. In a cross assignment of error, the County argues that the circuit court erred

in overruling its demurrer on the grounds that the Browns' failure to comply with Code § 15.2-1248

--------
* This opinion is not designated for publication. *See* Code § 17.1-413(A).

required dismissal of their claims. For the following reasons, we affirm the circuit court's ruling in sustaining the demurrers.

## BACKGROUND

The Browns own a house in the Selma Estates neighborhood on Trongate Court in Leesburg (the "Brown home"). The Brown home is south of a stream that serves as a floodplain and stormwater outlet for the area's watershed. To the west of the Brown home is roughly ten acres of land that is owned by the Selma Estates Homeowner's Association. Loudoun County has floodplain and stormwater easements on some of the land west of the Brown home.

In 2015, two homes north of the Browns suffered flooding, but the Brown home did not sustain any flooding. Afterwards, Stanley Martin Homes ("SMH"), the developer of Selma Estates, its civil engineering firm, Christopher Consultants Ltd. ("CCL"), and the County conducted a review to determine the causes and impacts of the 2015 flood. It was determined that the flooding was from the stream to the north of the Brown home. Clare, who was serving as the Director of Land Engineering in the County's Department of Building and Development, was tasked with "strategizing the proper fix to the flooding." The County decided that the proper fix to avoid future flooding to the houses on Trongate Court would be to build a berm that would channel water towards a drainage culvert. SMH and CCL were tasked with constructing the berm.

Sometime during the investigation process, Clare sent Robert Balinger, another Loudoun County employee, to investigate the flooding. Upon viewing the stream and the related floodplain easement lines, Balinger discovered that the stream was located "significantly uphill from the Trongate homes." Balinger "realized there was an obvious mistake with the floodplain easement" and that "the floodwater was directed at the Trongate homes." Balinger reported these findings to Clare and informed him that the flooding "was likely coming from the stream overtopping and then flooding towards the homes instead of staying within the floodplain easement." Balinger told Clare

that "to correct the problem the proper fix would be to 'keep the stream in the stream'" and that building a berm behind the Trongate homes "was an improper fix." Clare decided to let SMH construct the berm to see if it fixed the issue. Clare did not inform the Trongate Neighbors of Balinger's findings or floodplain concerns.

In the course of his employment as "point person for the County[,]" Clare "regularly communicated with the Trongate Neighbors addressing their concerns and providing assurances that the Berm was the proper solution to the flooding." Clare also "promised" to "ensure the Berm was built in accordance with the County's Facilities Standards Manual ("FSM") and the State's Stormwater Management Handbook." However, Clare did not ensure the berm's compliance with either. In 2016, the berm was built.

In 2018, another flood occurred, this time flooding the basement of the Brown home. After the 2018 flood, the Federal Emergency Management Agency ("FEMA") and Wood Engineering each conducted a study for the Selma Estates Neighborhood regarding the flooding. FEMA concluded that the Brown home is in a 100-year floodplain and Wood Engineering determined that the berm gathered the floodplain's water behind the Brown home and was the direct cause of the 2018 flood.

On August 4, 2022, the Browns filed a five-count complaint[1] seeking compensatory and punitive damages from the County and Clare. Count I asserted an inverse condemnation claim against the County. The other counts sought recovery against Clare on grounds of negligence

---

[1] Before serving the County and Clare, the Browns were granted leave to file their first amended complaint. The first amended complaint contained the same five counts as the original complaint.

(Count II), gross negligence (Count III), constructive fraud (Count IV), and actual fraud (Count V).[2] On the same day, the Browns also sent a letter to the County informing them of the lawsuit.

After a hearing in March 2023, the circuit court sustained the demurrers as to Counts I, II, and III. In its ruling, the circuit court held that (1) the Browns did not sufficiently allege a claim for inverse condemnation against the County, and (2) everything that Clare did, he did as an employee of the County or in his capacity as "point person" and "[h]e had no special duty to the Browns different to them than anybody else." The circuit court granted the Browns leave to amend, and they timely filed their second amended complaint. The County and Clare again filed demurrers. In July 2023, the circuit court held a hearing on the demurrers to the second amended complaint and once again sustained them, this time with prejudice. The Browns appeal.

## ANALYSIS

We review the circuit court's ruling on a demurrer de novo. *AGCS Marine Ins. Co. v. Arlington Cnty.*, 293 Va. 469, 473 (2017). In reviewing a circuit court's decision on a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). We also accept any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Wright v. Graves*, 78 Va. App. 777, 781 (2023). We also "disregard allegations that 'are inherently impossible[] or contradicted by other facts pleaded' and reject 'inferences [that] are strained, forced, or contrary to reason.'" *New Age*

---

[2] In November of 2023, the circuit court entered an agreed order that dismissed Counts IV and V. Accordingly, these two fraud counts are not before this Court.

*Care, LLC v. Juran*, 71 Va. App. 407, 429 (2020) (second alteration in original) (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 330 n.2 (2018)).  "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process."  *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

## I.  Inverse Condemnation

The Browns argue that the circuit court erred in its application of *AGCS Marine Insurance Co.* by finding that they were required, and failed, to plead that the County purposefully took or failed to take any action that intentionally relocated the FEMA floodplain.

The Constitution of Virginia states:

> [T]he General Assembly shall pass no law whereby private property, the right to which is fundamental, shall be damaged or taken except for public use.  No private property shall be damaged or taken for public use without just compensation to the owner thereof.  No more private property may be taken than necessary to achieve the stated public use.

Va. Const. art. I, § 11.  "Virginia law recognizes inverse condemnation as a viable theory of recovery for de facto violations of Article I, Section 11 of the Constitution of Virginia."  *AGCS Marine Ins. Co.*, 293 Va. at 477.  "Inverse condemnation arises out of the self-executing nature of Article I, Section 11 and thus must be distinguished from common-law tort claims."  *Id.* (citing *Burns v. Bd. of Supervisors*, 218 Va. 625, 627 (1977)).

> Inverse condemnation permits recovery only when "property is taken or damaged *for public use*"— thereby bestowing on the owner a right to "sue upon an *implied contract* that he will be paid therefor such amount *as would have been awarded* if the property had been condemned under the eminent domain statute."

*Id.* (quoting *Burns*, 218 Va. at 627).

> To state a claim for inverse condemnation, a petitioner must allege 1) that she is the owner of private property or some right attached thereto; 2) that the property or right connected to that property has been damaged or taken by a body with the condemnation authority; 3) that the taking and/or damaging was

- 5 -

for a public use; and 4) that the government body failed to pay just compensation.

*Town of Iron Gate v. Simpson*, 82 Va. App. 38, 52 (2024).

In its demurrer, the County disputed that the Browns sufficiently alleged that the Browns' property was damaged by the County's action or failure to act. Specifically, the County contended that without factual allegations that the County constructed or owned the berm, the second amended complaint failed to state a claim for inverse condemnation. Further, the County averred that it had no duty to maintain the berm and there are no facts alleged that the County failed to do so.

The second amended complaint alleged that in 2012 the County was deeded flood plain and storm drain easements. Then, because there were obvious drainage problems as evidenced by the 2015 flood, the County determined that a berm would fix the drainage issues and approved of the construction. The County's approval was required because they have ownership over the HOA property for purposes "of constructing, operating, maintaining, adding to, altering or replacing present or future stormwater management facilities . . . or other drainage structures." Accordingly, the Browns sufficiently alleged enough action on behalf of the County in the construction of the berm. In fact, the circuit court found that "for purposes of demurrer review, [the Browns] have alleged sufficient facts of governmental action or inaction."

However, the circuit court then went outside the grounds stated in the demurrer and ruled that the Browns were required to allege that the County purposefully acted or failed to act in a way that *intentionally* relocated the FEMA floodplain, citing *AGCS Marine Insurance Co.*, 293 Va. 469. This is a misapplication of *AGCS Marine Insurance Co.* and not the standard for sufficiently pleading a claim for inverse condemnation. In its ruling, the circuit court created an additional requirement that not only must the government body act or fail to act purposefully, but that the result from that action or inaction must be intentional. In *AGCS Marine Insurance Co.*, the Supreme Court held that "[s]imply alleging that damage occurred *incident to* the operation of the

- 6 -

public sewage system is insufficient to state a claim for inverse condemnation." 293 Va. at 485. However, the intentionality that the Supreme Court emphasized in its analysis was for the purpose of determining whether the taking was for a public use. But in this case the County did not demur to the Browns' second amended complaint for failing to allege that the taking was for public use.

The circuit court correctly found that, for purposes of demurrer review, the Browns sufficiently pleaded facts of governmental action or inaction. However, the circuit court then went beyond the grounds stated in the demurrer and misapplied *AGCS Marine Insurance Co.* in sustaining the demurrer. Code § 8.01-273(A) states that "[n]o grounds other than those stated specifically in the demurrer shall be considered by the court." Because of this, "we may affirm an order sustaining a demurrer only on a ground that the defendant raised in the trial court." *Theologis v. Weiler*, 76 Va. App. 596, 604 (2023) (citing Code § 8.01-273(A)).

Therefore, the circuit court erred in its application of *AGCS Marine Insurance Co.* and in relying on grounds not stated specifically in the demurrer in its ruling.

## II. Presentment of Claim

Because we find that the circuit court erred in sustaining the demurrer as to Count I in the second amended complaint, we must address the County's assignment of cross-error. The County argues that the circuit court erred in ruling that the Browns were not required to comply with Code § 15.2-1248, and therefore erred in overruling the demurrer on that ground.

Code § 15.2-1248 is a presentment statute that states in relevant part: "[n]o action shall be maintained by any person against a county upon any claim or demand until such person has presented his claim to the governing body of the county." However, the Browns contend that they were not required to comply with Code § 15.2-1248 because an action for inverse condemnation is a "self-executing" constitutional claim. In the alternative, the Browns argue that they complied with the presentment statute by sending a letter to the County when they filed their lawsuit.

- 7 -

"In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 191 (2024) (alterations in original) (quoting *Miller & Rhoads Bldg., L.L.C. v. City of Richmond*, 292 Va. 537, 541 (2016)). If "the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.* at 192 (quoting *Nalls v. Commonwealth*, 79 Va. App. 712, 718 (2024)). "As such, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Id.* (alteration in original) (quoting *Stanton v. Va. Beach - Fire Operations*, 79 Va. App. 587, 592 (2024)).

In the case of *Dominion Chevrolet Co. v. County of Henrico*, 217 Va. 243 (1976), the Supreme Court held that the plaintiff was not required to comply with the presentment statutes in its claim for a refund of taxes. However, this was because "the General Assembly of Virginia made explicit provision for such correction and refund in the Virginia Tax Code and by its enactment of Code §§ 58-1145 and 58-1148." *Id.* at 247. This is distinguishable from the case at hand because the General Assembly has not created specific procedural requirements for bringing an inverse condemnation claim like they have with claims for refunds of taxes. In *Dominion Chevrolet Co.*, the Court was obliged to harmonize two statutes that listed procedural requirements to maintain a claim. We are not tasked with such an exercise.

Although the Browns are correct that the constitutional provisions regarding inverse condemnation are self-executing, there is no limiting language in Code § 15.2-1248 that would create an exception to the procedural requirements in presenting such a claim to the governing body. *See Nelson Cnty. v. Coleman*, 126 Va. 275, 279 (1919) ("The constitutional provisions which prohibit the taking or damaging of private property for public uses without compensation are self-executing."). Code § 15.2-1248 is clear that a person cannot maintain an action against a county

until they have presented the claim to the governing body of the county. The only qualifier in the statute relates to the existence of a binding arbitration agreement, which is not applicable here.

Accordingly, under the plain language of the statute, the Browns were required to present their claim to the governing body of the county and the circuit court erred in ruling otherwise.

In addition, we reject the Browns' assertion that sending a letter notifying the County that they filed a lawsuit against it was sufficient for compliance with Code § 15.2-1248. Upon presenting a claim to the governing body of the county, the "attorney for the Commonwealth . . . shall represent the county before the board and advise the board of any claim which in his opinion is illegal or not before the board in proper form or upon proper proof, or which for any other reason ought not to be allowed." Code § 15.2-1245. The language in Code § 15.2-1248 prohibits the maintaining of an action until the claim has been presented. This is because "notice affords the city authorities the opportunity to investigate the circumstances [and to] examine the locality in which the injury is alleged to have occurred." *South Norfolk v. Dail*, 187 Va. 495, 501 (1948) (quoting *O'Neil v. Richmond*, 141 Va. 168, 172 (1925)). Sending the notification letter simultaneously with the filing of the lawsuit frustrates the legislature's purpose in requiring presentment of the claim because it does not provide the Commonwealth's Attorney time to advise the board of such claim.

Therefore, the circuit court erred in overruling the County's demurrer on the ground that the Browns were not required to comply with Code § 15.2-1248. As such, we find that the circuit court erred in sustaining the demurrer on the grounds that the Browns did not state a claim for inverse condemnation, but that the demurrer should have been sustained for the Browns' failure to comply with Code § 15.2-1248. We acknowledge that this is a peculiar path to affirming the circuit court, but ultimately the end result was correct. The demurrer was sustained, but the circuit court ruled in the opposite manner in which it should have.

III.  Negligence and Gross Negligence

"The elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006) (citing *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 780 (1951)).

"In Virginia, '[t]he question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence.'" *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 79 (2019) (alteration in original) (quoting *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 277 (1991)).  In answering this question, "we begin with the axiom that 'there is no such thing as negligence in the abstract, or in general, or . . . *in vacuo*.'" *Id.* (quoting *Kent v. Miller*, 167 Va. 422, 425-26 (1937)).

In their second amended complaint, the Browns allege that Clare "assumed the responsibility (along with SMH and CCL) of strategizing the proper fix to the flooding, overseeing the Berm's construction and communicating the County's plans to the Trongate Neighbors."  The Browns further allege that Clare was "acting as the point person for the County."  Notably, the Browns do not allege that Clare developed any plans or participated in the construction of the berm.  Instead, they allege, in conclusory fashion, that Clare "in his ministerial actions . . . had a duty to the Browns to avoid negligent acts that likely would lead to foreseeable harm."  However, mistakenly carrying out ministerial actions does not automatically equate to the imposition of a legal duty.  In *Marshall v. Winston*, 239 Va. 315, 317 (1990), the Supreme Court held that there was no legal duty alleged despite the allegations that the defendants "violat[ed] . . . their mandated ministerial duties."  In its holding, the Supreme Court affirmed the circuit court's ruling which sustained demurrers on

- 10 -

the grounds that "the allegations were insufficient to show that the defendant owed a special duty to the decedent that would subject them to liability." *Id.*

Clare's "ministerial actions" included overseeing the berm's construction through his employment with the County, and this vague allegation cannot be presumed to impose a legal duty when Clare did not prepare any plans for or participate in the construction of the berm. Therefore, the second amended complaint is devoid of any rational connection between Clare's ministerial actions for the County and a duty to protect the Browns from flooding due to the berm's construction by two private companies. Although the Browns argue correct statements of law, that an employee acting within the scope of their employment can be held liable to third parties for their negligent actions, it does not cure the lack of factual allegations that Clare owed an independent legal duty to the Browns to protect them from flooding. Further, Clare being told by a subordinate employee that the berm "was an improper fix" for the flooding neither triggered a legal duty to the Browns nor created a connection between Clare's ministerial actions and a duty to protect the Browns.

As such, we agree with the circuit court that no duty in tort to the Browns was sufficiently alleged. Accordingly, the circuit court did not err in sustaining Clare's demurrer to the negligence and gross negligence claims.

CONCLUSION

For the reasons stated above, the circuit court's ruling is affirmed.

*Affirmed.*