PRESENT: Lemons, C.J., Mims, McClanahan, Powell, Kelsey, and McCullough, JJ., and Millette, S.J.

WESLEY QUISENBERRY, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF WANDA QUISENBERRY, DECEASED

OPINION BY
v. Record No. 171494                    SENIOR JUSTICE LEROY F. MILLETTE, JR.
                                        October 11, 2018

HUNTINGTON INGALLS INCORPORATED

UPON A QUESTION OF LAW CERTIFIED BY THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

The United States District Court for the Eastern District of Virginia entered an order of

certification requesting that this Court exercise jurisdiction pursuant to Article VI, Section 1 of

the Constitution of Virginia and Rule 5:40 and answer the following question of law:

> Does an employer owe a duty of care to the family member of an employee who
> alleges exposure to asbestos from the work clothes of the employee, where such
> exposure takes place off of the employer's premises and the employer has no
> relationship with the family member?

We accepted the certified question, and, for the reasons stated herein, we now restate the

question pursuant to our authority under Rule 5:40(d),[1] as follows:

> Does an employer owe a duty of care to an employee's family member who
> alleges exposure to asbestos from the work clothes of an employee, where the
> family member alleges the employer's negligence allowed asbestos fibers to be
> regularly transported away from the place of employment to the employee's
> home?

---

[1] Rule 5:40(d) states that "[t]his Court may in its discretion restate any question of law certified," and the Court has previously exercised its discretion to restate certified questions based on the authority of this rule "when doing so will aid in producing a determinative answer in the proceedings." *Blount v. Clarke*, 291 Va. 198, 202 n.1, 782 S.E.2d 152, 153 n.1 (2016) (internal quotation marks and alteration omitted); *see also VanBuren v. Grubb*, 284 Va. 584, 589, 733 S.E.2d 919, 921 (2012) (same).

So stated, we answer in the affirmative.

## I. FACTS AND PROCEEDINGS

The certified question of law arises following a motion before the district court to dismiss this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Accordingly, we take the factual allegations stated in the first amended complaint ("the complaint") as true "for the purposes of framing an answer that is responsive to the needs of the district court." *Wyatt v. McDermott*, 283 Va. 685, 689, 725 S.E.2d 555, 556 (2012) (citing *Zinermon v. Burch*, 494 U.S. 113, 118 (1990)).

Plaintiff alleges that from approximately 1942 to 1977, Wanda Quisenberry's father, Bennie Plessinger, was employed by Newport News Shipbuilding and Dry Dock, now known as Huntington Ingalls Incorporated ("the Shipyard"), in various capacities in which he was routinely exposed to asbestos and in which asbestos dust adhered to his clothing. He brought home asbestos fibers and his car was contaminated with these fibers. His daughter, Wanda, lived in his home and was exposed to asbestos beginning in 1942. Beginning in 1954, she regularly helped launder her father's clothes, shaking off and breathing in asbestos dust in the process. She moved out of the home in 1969.

In December 2013, Wanda Quisenberry was diagnosed with malignant pleural mesothelioma, caused by exposure to asbestos dust and fibers. She died from the disease three years later. Her son, Wesley Quisenberry, administrator of her estate, brought this action in the Circuit Court of the City of Newport News. As is relevant to this certified question, the complaint alleges that in the years Wanda was exposed to asbestos, particularly between 1950 and 1969, the Shipyard knew or had reason to know of the dangers that asbestos posed to workers' family members and members of the public, including Wanda. The complaint alleges

2

the Shipyard was negligent in choosing not to exercise reasonable care to, among other things, sufficiently warn workers not to wear work clothes home; educate workers about safeguards such as coveralls; provide a locker room, showers, or laundry service; and adhere to various statutes, regulations, and guidelines. The complaint further alleges that this negligence proximately resulted in Wanda's death. A separate count alleges gross negligence and wanton and willful conduct on the part of the Shipyard.

After removing to federal court, the Shipyard sought to dismiss this action on the basis that the plaintiff's theory relied on "take home" exposure liability. Although this Court has not addressed the specific issue, the Shipyard represented that Virginia precedent did not support imposing a legal duty on an employer for injury to an employee's family member that occurred outside the premises. Agreeing that this Court had not addressed this issue, Quisenberry argued that the majority, although not all, of the circuit courts from Virginia that had considered the issue had recognized such a duty. The Shipyard then moved to certify the question to the Supreme Court of Virginia to resolve the issue. On November 3, 2017, the Eastern District issued a certification order requesting that this Court exercise its discretion to consider this dispositive question of law. On November 16, 2017, this Court issued an order accepting the certified question for oral argument and requesting briefing. We now consider the question.

## II. DISCUSSION

### A. *Restating the Question*

The certified question in this case characterizes the Shipyard and Wanda as having "no relationship." The pleadings clearly indicate they lack a contractual, familial, employer-employee, or agency-agent relationship, or facts giving rise to a "special relationship." *See Thompson v. Skate America, Inc.*, 261 Va. 121, 129, 540 S.E.2d 123, 127 (2001) (collecting

3

examples of special relationships recognized in Virginia). They are, generally speaking, strangers under the law. This is not, however, dispositive as to the existence of a duty.[2] Whether the circumstances surrounding the issue now being litigated created a sufficient relationship for duty to lie in a general negligence claim is a question of law. This inquiry is distinct from the traditional characterizations of "relationship" above and is dependent on whether plaintiff has pled a set of circumstances where the Shipyard placed Wanda within reach of the Shipyard's

---

[2] *Compare Taboada v. Daly Seven, Inc.*, 271 Va. 313, 327, 626 S.E.2d 428, 435 (2006) ("the common law imposes a duty" due to the "the special relationship of innkeeper and guest"); *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 107, 540 S.E.2d 134, 139 (2001) (for a plaintiff tenant to allege negligence of landlord for failure to warn of violent crimes committed by third parties around the housing development, "the plaintiff must establish that there is a special relationship, either between the plaintiff and the defendant or between the third party criminal actor and the defendant"); *Terminal Cars, Inc. v. Wagnar*, 205 Va. 214, 219, 135 S.E.2d 802, 805 (1964) (respecting a passenger, a common carrier owes a duty of "utmost care, diligence and foresight in the operation and management of the vehicle" the passenger is riding); *Wright v. Webb*, 234 Va. 527, 533, 362 S.E.2d 919, 922 (1987) ("a business invitor, whose method of business does not attract or provide a climate for assaultive crimes, does not have a duty to take measures to protect an invitee" from such crimes), *with RGR, LLC v. Settle*, 288 Va. 260, 276, 764 S.E.2d 8, 17 (2012) (reiterating that "the common law requires that every person must exercise ordinary care in the use and maintenance of his own property to prevent injury to others," and imposing a duty where defendant negligently stacked lumber unreasonably impairing the view of a trucker, a stranger, approaching a railroad crossing); *Perlin v. Chappell*, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957) (defendant owed a duty to the plaintiff, a stranger, when defendant allowed a cow to escape his premises on the basis that the common law "imposes upon every person the duty to exercise ordinary care in the use and maintenance of his own property to prevent injury to others"); *Rice v. Turner*, 191 Va. 601, 605, 62 S.E.2d 24, 26 (1950) (duty where defendant's cow escaped the premises and was struck by a car operated by a stranger because "[t]he common law imposes upon every person the duty to exercise ordinary care in the use and maintenance of his own property to prevent injury to others"); *Overstreet v. Security Storage & Safe Deposit Co.*, 148 Va. 306, 317, 138 S.E. 552, 555 (1927) (as a stranger, "[t]he security company owed [plaintiff] only the duty it owed to mankind generally — that is, not to do any act which a person of ordinary prudence could reasonably apprehend, as a natural and probable consequence thereof, would subject him to peril"); *Haywood v. South Hill Mfg. Co.*, 142 Va. 761, 765-66, 128 S.E. 362, 364 (1925) (where an 11-year-old boy, a stranger, was non-fatally electrocuted when he touched defendant's transformer, "[r]easonable care requires those using dangerous agencies to avail themselves of the best mechanical contrivances and inventions in practical use which are effectual in preventing injury to persons and property"); *King v. Hartung*, 123 Va. 185, 188, 96 S.E. 202, 203 (1918) (property owner had a duty to avoid harm to passersby, though strangers, where "owners themselves created the danger").

4

conduct, within a class of persons at recognizable risk of harm. Accordingly, in order to prevent the language of "relationship" in the certified question from creating assumptions as to duty under the law, we restate the original question as follows:

> Does an employer owe a duty of care to an employee's family member who alleges exposure to asbestos from the work clothes of an employee, where the family member alleges the employer's negligence allowed asbestos fibers to be regularly transported away from the place of employment to the employee's home?

"[W]hether a legal duty in tort exists is a pure question of law." *Volpe v. City of Lexington*, 281 Va. 630, 636, 708 S.E.2d 824, 827 (2011) (internal quotation marks omitted). The "finding of a legal duty" is a "prerequisite to a finding of negligence." *Jeld-Wen, Inc. v. Gamble*, 256 Va. 144, 149, 501 S.E.2d 393, 397 (1998). "Without a legal duty there can be no cause of action for an injury." *Id.* at 147, 501 S.E.2d at 396. Accordingly, the question before us is a dispositive threshold question, *Marshall v. Winston*, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990), in that if it is answered in the negative there can be no action in negligence based upon Virginia law before the federal court for the Eastern District.

### B. Analysis

The principles of duty in general negligence claims under such circumstances in Virginia are familiar and established. They were set forth in *RGR, LLC v. Settle*, 288 Va. 260, 275, 764 S.E.2d 8, 16 (2012), and we reaffirm them today.[3] "General negligence principles require a person to exercise due care to avoid injuring others." *Id.* (citing *Overstreet v. Security Storage & Safe Deposit Co.*, 148 Va. 306, 317, 138 S.E. 552, 555 (1927)); Charles E. Friend, Personal

---

[3] While *RGR* concerns a defendant landowner and a plaintiff who is injured adjacent to the land, it is neither a premises liability case nor unique to real property, but based firmly in general negligence principles. *RGR* invoked precedent from negligence cases addressing real property, personal property, and conduct and is one of this Court's benchmarks in the area of general negligence.

5

Injury Law in Virginia § 1.1.1., at 2 (3rd ed. 2003) ("There is . . . a general duty not to injure others [that] arises whenever [a] defendant's conduct creates a risk of harm to others."). Specifically, the common law requires that "'every person [must] exercise ordinary care in the use and maintenance of his own property to prevent injury to others.'" *Perlin v. Chappell*, 198 Va. 861, 864, 96 S.E.2d 805, 808 (1957) (quoting *Rice v. Turner*, 191 Va. 601, 605, 62 S.E.2d 24, 26 (1950)); *accord Standard Oil Co. v. Wakefield,* 102 Va. 824, 828, 47 S.E. 830, 831 (1904) (recognizing the "duty of every man to so use his own property as not to injure the persons or property of others"). As we reiterated in *RGR*, the "'broad common law maxim' *sic utere tuo ut alienum non laedas* requires that 'one must so use his own rights as not to infringe upon the rights of another.'" 288 Va. at 275-76, 764 S.E.2d at 16 (quoting *Cline v. Dunlora South, LLC*, 284 Va. 102, 107, 726 S.E.2d 14, 17 (2012)).

This duty is not abstract: a specific course of conduct gives rise to a specific duty extending to specific persons. *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 278, 401 S.E.2d 878, 883 (1991) ("The scope of the duty will vary with the circumstances of each case, but it is always a duty owed to a discernible individual, or to a class of which that individual is a member.")

In defining those to whom a duty is owed, we have said this general duty is owed "to those within reach of a defendant's conduct." *RGR,* 288 Va. at 276, 764 S.E.2d at 17.

This is because "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 100 (N.Y. 1928). This relationship, however temporary, is essential to duty, and the question of whether there exists a relationship between the parties goes to the heart of the inquiry before this Court. We have said "there is no such thing as negligence

in the abstract, or in general, or as sometimes is said, *in vacuo*. Negligence must be *in relation to some person*." *Kent v. Miller*, 167 Va. 422, 425-26, 189 S.E. 332, 334 (1937) (emphasis added).

This ancient common law principle is quoted in *Dudley*:

> The question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence . . . A man is entitled to be as negligent as he pleases toward the world as a whole if he owes no duty to them.

241 Va. at 277, 401 S.E.2d at 882 (quoting with approval *Le Lievre v. Gould*, 1 Q.B. 491, 497 (1893)). *Dudley* goes on, *id*. at 278, 401 S.E.2d at 882, to cite with approval the similar views expressed in *Palsgraf*, 162 N.E. at 99-101, numerous treatises, and our own cases, including *Kent*, 167 Va. at 425-26, 189 S.E. at 334.

Where no relationship exists, it is axiomatic that there is no duty. Yet "[t]he existence of [a] duty does not depend on proving a *particular* relationship," but "'arises from that basic and necessary regulation of civilization which forbids any person because of his own convenience, to recklessly, heedlessly or carelessly injure another.'" *RGR*, 288 Va. at 279-80, 764 S.E.2d at 19 (quoting *Louisville & Nashville R.R. Co. v. O'Neil*, 119 Va. 611, 627, 89 S.E. 862, 866 (1916) (internal quotation marks omitted)) (emphasis added). Thus, "[i]n the vast majority of negligence actions, the parties were strangers at the time of the incident, and the action is based upon the broad duty . . . not to injure others by acts of omission or commission." Friend, Personal Injury Law in Virginia § 1.1.1., at 2. The motorist undertakes a duty to other nearby motorists and pedestrians – the class of persons which he places in a "recognizable risk of harm" – to exercise due care in his conduct as he drives. *Parker v. Debose*, 206 Va. 220, 223, 142 S.E.2d 510, 512 (1965); *Dudley*, 241 Va. at 278, 401 S.E.2d at 882-83 (quoting Restatement (Second) of Torts § 281 cmt c). The transient relationship of a motorist to another motorist or to a pedestrian is rooted in the recognizable risk posed by negligent driving and gives rise to a duty

7

of care, despite the fact that the parties are complete strangers. We have previously held that this duty can arise vis-a-vis multiple individuals or to a class of persons, provided they are "within reach of a defendant's conduct." *RGR*, 288 Va. at 276, 764 S.E.2d at 17.

As set forth in both *RGR* and *Dudley*, "'[i]n order for the actor to be negligent with respect to the other, his conduct must create a recognizable risk of harm to the other individual, or to a class of persons — as, for example, all persons within a given area of danger — of which the other is a member.'" *RGR*, 299 Va. at 279, 764 S.E.2d at 19 (quoting *Dudley*, 241 Va. at 278, 401 S.E.2d at 882-83 and Restatement (Second) of Torts § 281 cmt c). Here, Wanda is alleged to be one such person within a "given area of danger." *Id.* "The only 'relationship' which must exist [for a duty to arise] is a sufficient juxtaposition of the parties in time and space *to place the plaintiff in danger from the defendant's acts*." *RGR*, 288 Va. at 280, 764 S.E.2d at 19 (quoting Friend, Personal Injury Law in Virginia § 1.1.1., at 2; *see also Rice*, 191 Va. at 605, 62 S.E.2d at 26) (emphasis added).

Our precedent makes clear that this "juxtaposition of time and space" does not require actual interaction between the parties, but sufficient relation to place plaintiff within reach of defendant's conduct. We have recognized the duty of a negligent actor can arise through his conduct to the class of persons exposed to the recognizable risk he creates. This Court has found that a property owner had a duty to prevent his cow from wandering onto nearby roadways by virtue of the proliferation of paved roads in the Commonwealth and the "common knowledge" that cows on a roadway can pose a hazard to motorists. *Rice*, 191 Va. at 605, 62 S.E.2d at 26. The proximity of the owner or his farmhands to the motorist, or a prior existing relationship, was not relevant to the question of duty, but rather the proximity of the cows to the roadway and the recognizable risk of harm to the class of persons on the road. *Id.* In *RGR*, we held that the

8

artificial hazard of defendant's making – stacks of lumber restricting visibility at a railroad crossing – placed the plaintiff crossing adjacent railroad tracks within reach of defendant's conduct and thus created a duty to the plaintiff. *RGR*, 288 Va. at 281, 764 S.E.2d at 20. Similarly, a company's negligent discharge of toxic chemicals into a river would not result in an absence of duty to injured swimmers downstream merely because the harm to plaintiffs did not occur contemporaneously and geographically adjacent to defendant's actions.

Thus, that harm in the present case occurred at a location removed from the employer's business and after hours is a distinction without a difference. The artificial hazard created by the Shipyard – asbestos dust – was allegedly released through the Shipyard's course of conduct and moved to place Wanda in danger. The nature of the hazard allegedly created by the Shipyard's conduct was that asbestos fibers, the inhalation of which could cause mesothelioma, regularly accumulated on the clothes of workers during the day and were released again when those workers returned home and had their clothes washed, thus placing Wanda and others similarly situated within reach of the Shipyard's conduct and within the "zone of danger." This created a "recognizable risk of harm" to those sharing living quarters with the workers, resulting in a duty of ordinary care to that class of persons.

While "[f]oreseeability [of harm], it has been many times repeated, is not to be *equated* with duty," *Holiday Motor Corp. v. Walters*, 292 Va. 461, 478, 790 S.E.2d 447, 455 (2016) (citation omitted) (emphasis added), we have also recognized that it is a necessary consideration in establishing the "reach" of defendant's conduct or "recognizable risk of harm" discussed by the Court in *RGR*, 288 Va. at 279, 764 S.E.2d at 19. *See Dudley*, 241 Va. at 279, 401 S.E.2d at 883 (recognizing that the class to whom a duty is owed is established by determining who is "directly and *foreseeably exposed to the risk of bodily harm*" as a result of the defendant's

9

actions) (emphasis added); *Overstreet*, 148 Va. at 318, 138 S.E. at 555 ("[W]henever the circumstances attending the situation are such that an ordinary prudent person could reasonably apprehend that, *as a natural and probable consequence of his act*, another person rightfully there will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises.") (emphasis added).[4]

As pled, workers accumulated asbestos dust on their clothes. As pled, in the absence of on-site laundry, lockers, or warning to the contrary, these individuals would regularly wear those clothes into their home environment and have them laundered there. As pled, the fibers traveled on the clothes of persons who worked with asbestos, and the fibers posed a danger to individuals who breathed in the asbestos dust in the home environment. The pleadings support a "recognizable risk of harm" to a class of persons "within a given area of danger" of defendant's conduct, including Wanda and the class of persons similarly situated.

We have repeatedly said:

> [W]henever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such injury.

---

[4] This Court has also observed, "'Imposition of a duty does not depend upon foreseeability *alone*.'" *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 159, 207 S.E.2d 841, 845 (1974) (citation omitted) (emphasis added); *accord Wright*, 234 Va. at 531, 362 S.E.2d at 921. We are hardly an outlier in according foreseeability some consideration in our duty analysis. "[A]lmost every jurisdiction does treat foreseeability as a significant factor . . . in analyzing whether the duty element is met in a negligence claim. . . . The reality . . . is that forty-seven states plainly do give foreseeability a significant role in duty analysis." Benjamin C. Zipursky, *Third Restatement of Torts: Issue Two: Article and Commentary: Foreseeability in Breach, Duty and Proximate Cause*, 44 Wake Forest L. Rev. 1247, 1258 (2009).

*RGR*, 288 Va. at 276, 764 S.E.2d at 17 (quoting *Southern States Grain Mktg. Coop.*, 205 Va. at 761, 139 S.E.2d at 793 and *Standard Oil*, 102 Va. at 832, 47 S.E. at 832); Friend, Personal Injury Law in Virginia § 1.1.1., at 2.  The Shipyard, by virtue of Wanda's father's regular accumulation of asbestos fibers on his work clothes, was placed in such a position with regard to Wanda that if it did not use ordinary care and skill, it would subject Wanda to regular danger of injury from asbestos fibers.  Accordingly, a duty arose to use ordinary care and skill to avoid such injury to Wanda, as well as other persons similarly situated.

The Shipyard argues that, in this case, no duty can lie because asbestos dust traveled on the backs of employees.  This is likewise a distinction without a difference.  The concept of a mobile hazard that leaves a premises is not new to this Court, and asbestos that predictably leaves the property is not unlike livestock or any other hazard posing a risk of harm to persons outside the premises.  *Rice*, 191 Va. at 605, 62 S.E.2d at 26 (finding a duty from premises owner to motorist because a cow wandering outside a premises poses a recognizable risk should it wander onto a highway).  As pled, the workers were not informed of the dangers of the asbestos dust.  Absent knowledge, the workers were simply vehicles or carriers of the asbestos dust:  they were a means of dispersal yielding various foreseeable and unforeseeable routes of exposure to the hazard created by the Shipyard's conduct in engaging in industrial practices that create asbestos dust.[5]

---

[5] The circumstances are analogous to this Court's recognition of a duty sounding in nuisance for noxious substances.  *Trevett v. Prison Ass'n of Va.*, 98 Va. 332, 336, 36 S.E. 373, 374 (1900) (finding a duty to other riparian owners to leave water free of substances which "substantially impair value for the ordinary purposes of life . . . thus impair[] the comfortable or beneficial enjoyment of property in its vicinity").  Just as water or air is the force that disperses toxins in a nuisance case, so did work clothes covered with dust on the back of an uninformed worker disperse the asbestos hazard here when the worker foreseeably travels home at the end of the day and has his clothes laundered.

We have said, in the context of products liability, that "[t]he purpose of making the finding of a legal duty as a prerequisite to a finding of negligence . . . is to avoid the extension of liability for every conceivably foreseeable accident, without regard to common sense or good policy." *Holiday Motor Corp.*, 292 Va. at 478, 790 S.E.2d at 455 (quoting *Jeld-Wen, Inc.*, 256 Va. at 149, 501 S.E.2d at 397 (emphasis omitted)). And the common law has recognized some exceptions to duty arising from foreseeable harm.[6] At the same time, "the law, which restrains a man from doing mischief to his fellow-citizens, though it diminishes the natural [liberty], increases the civil liberty of mankind." 1 William Blackstone, Commentaries \*125-26. This case relies on an existing duty of care, firmly established in Virginia law and well-rooted in common law, establishing liability to those members of a class of persons facing a recognizable risk of harm from one's conduct. And, under the facts as alleged in this complaint, the family members of asbestos workers are one such class of persons. The Shipyard argues that establishing a duty in this area must fall to the legislature. Although the legislature is of course free to intervene so as to calibrate in either direction the scope of the duty, default principles rooted in the common law establish the existence of a duty here. Legislative action is not necessary to establish a rule that already exists at common law.[7]

---

[6] For example, Virginia does not recognize Dram Shop liability. The common-law rule that a vendor of alcoholic beverages is not liable for injuries to a third party that result from the intoxication of his patron is that "individuals, drunk or sober, are responsible for their own torts and that . . . drinking the intoxicant, not furnishing it, is the proximate cause of the injury." *Williamson v. Old Brogue, Inc.*, 232 Va. 350, 353, 350 S.E.2d 621, 623 (1986). The instant case, however, is more analogous to a grocery store that negligently provides free but contaminated food to its unsuspecting employees, knowing the employees will take some of that food home to share with the employees' families: the store owner, and not the employees, is responsible for resulting illness.

[7] While courts nationwide are split on the issue, and many have not had occasion to rule directly on the matter, we are far from the first jurisdiction to recognize a duty to cohabitants of employees in asbestos cases. *See, e.g., Bobo v. Tennessee Valley Authority*, 855 F.3d 1294, 1307 (11th Cir. 2017) (applying Alabama law) (finding that "TVA did have a duty not to expose [its

12

In *RGR*, we clarified that the Court did not proclaim a "new duty" to protect sight lines but rather upheld a long-standing duty to use one's property with ordinary care. *RGR*, 288 Va. at 280, 764 S.E.2d at 19. We do the same today. The question of whether under these particular facts the Shipyard was actually responsible for creating a dangerous condition in the home is a question of proof rather than duty, depending on evidentiary matters not relevant to this certified question.

Finally, as we observed in *RGR*, a determination of an absence of duty in this instance "would result in the wholesale rejection of a duty to exercise ordinary care in circumstances such as those here and would absolve one of liability for negligence no matter how dangerous the conduct or foreseeable the injury." *RGR*, 288 Va. at 283, 764 S.E.2d at 21 (citing *Cleveland v. Danville Traction & Power Co.*, 179 Va. 256, 259, 18 S.E.2d 913, 915 (1942); 2 Dan B. Dobbs et al., The Law of Torts § 253, at 9 (2d ed. 2011) ("Elevating a decision about particular facts to a no-duty rule will . . . exclud[e] liability not only in the particular case but also in others that are

_____

employee's wife] to the dangers of take-home asbestos"); *Kesner v. Super. Ct.*, 384 P.3d 283, 301 (Cal. 2016) (holding that employers and property owners owe members of a worker's household a duty to prevent take-home exposure to asbestos); *Chaisson v. Avondale Indus.*, 947 So. 2d 171, 183-84 (La. Ct. App. 2006) (finding defendant "owed a duty to [its employee's wife] to guard against her household exposure to asbestos from laundering her husband's work clothes."); *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 976 (Ind. 2002) ("[T]he reasonably expected use of asbestos products encompasses the cleaning of asbestos residue from one's person and clothing at the end of the workday."); *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143, 1149 (N.J. 1998) ("Exxon Mobil owed a duty to spouses handling the workers' unprotected work clothing based on the foreseeable risk of exposure from asbestos borne home on contaminated clothing."); *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 369 (Tenn. 2008) ("Alcoa had a duty to use reasonable care to prevent exposure to asbestos fibers not only to its employees but also to those who came into close regular contact with its employees' contaminated work clothes over an extended period of time."); *Rochon v. Saberhagen Holdings, Inc.*, 2007 Wash. App. LEXIS 2392, at *13 (Wash. Ct. App. Aug. 13, 2007) (unpublished) ("[E]ven in the absence of any special relationship between them, Kimberly-Clark had a duty to prevent [the employee's wife's] injury if its use of asbestos was unreasonably risky, and if [the wife's] injury was a foreseeable consequence of its risky actions.").

quite different on their facts and may call for a different result.")). The existence of a duty is a mere threshold question in the proof of negligence.[8]  *Marshall*, 239 Va. at 318, 389 S.E.2d at 904.  The scope of the duty and what constitutes negligence is inexorably reined in by what is reasonably foreseeable at the time, because a jury can only hold a defendant to the ordinary care and skill employed given the knowledge at the time.  *RGR*, 288 Va. at 282, 764 S.E.2d at 20.  Yet plaintiffs would be devoid of the opportunity to proceed with any such action, and thus make those proofs, absent this Court's recognition of a legal duty.

### III.  CONCLUSION

"Nobody is permitted by the law to create with impunity a stumbling block, a trap, a snare or a pitfall for the feet of those rightfully proceeding on their way."  *RGR*, 288 Va. at 279-80, 764 S.E.2d at 19 (quoting *Louisville & Nashville R.R. Co.*, 119 Va. at 627, 89 S.E. at 866).  The innocent cohabitator represents the quintessential class of persons "rightfully proceeding on their way" yet placed in a "given area of danger."  *Id.*  Because we find a duty does indeed lie to such persons in the recognizable and foreseeable area of risk, we answer the certified question, as restated, in the affirmative.

*Certified question, as restated, answered in the affirmative.*

---

[8] While much of this discussion is set forth in the context of ordinary negligence, where a duty lies between two parties in an ordinary negligence case, so may it lie to avoid gross negligence or willful or wanton conduct.  The latter terms

> have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care. . . .  They apply to conduct which is still, at essence, negligent . . . but which is so far from a proper state of mind that it is treated in many respects as if it were so intended.  Thus it is held to justify an award of punitive damages, and may justify a *broader* duty.

W. Page Keeton et al., Prosser & Keeton on Torts § 34, at 212-13 (5th ed. 1984) (emphasis added).  Accordingly, the pleadings support a duty as to the plaintiff's count of heightened negligence as well as ordinary negligence.

CHIEF JUSTICE LEMONS, with whom JUSTICE McCLANAHAN and JUSTICE KELSEY join, dissenting.

"In the early English law, there was virtually no consideration of duty." W. Page Keeton et al., Prosser & Keeton on Torts § 53, at 356 (5th ed. 1984). "The defendant's obligation to behave properly apparently was owed to all the world, and he was liable to any person whom he might injure by his misconduct." *Id.* at 357. "[W]hen negligence began to take form as a separate basis of tort liability, the courts developed the idea of duty, as a matter of some specific relation between the plaintiff and the defendant, without which there could be no liability." *Id.*

Today a majority of the Court: (1) eviscerates the well-established tort concept of particularized duty; (2) conflates duty and proximate cause by relying on foreseeability to determine whether a duty exists; (3) undermines the Workers' Compensation Act, Code § 65.2-100, *et seq.*, a carefully balanced bargain defining how injuries arising from the workplace are to be compensated; (4) creates a new cause of action in territory that should be the domain of the legislature; and (5) creates a duty to a potentially limitless class of plaintiffs. This opinion adopts the concept of duty to mankind generally, an empty duty "owed to all the world," and is unprecedented in Virginia. I respectfully dissent.

"All negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward v. Holland Family Props., LLC*, 284 Va. 282, 286, 726 S.E.2d 251, 254 (2012). "An action for negligence only lies where there has been a failure to perform some legal duty which the defendant owes to the party injured." *Balderson v. Robertson*, 203 Va. 484, 487, 125 S.E.2d 180, 183 (1962) (quoting *Williamson v. Southern Ry. Co.*, 104 Va. 146, 149, 51 S.E. 195, 196 (1905)). "[T]here is no such thing as negligence in the

15

abstract, or in general, or as sometimes is said, in *vacuo*.  Negligence must be in relation to some person."  *Kent v. Miller*, 167 Va. 422, 425-26, 189 S.E. 332, 334 (1937).

> The question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence.

*Dudley v. Offender Aid & Restoration, Inc.*, 241 Va. 270, 277, 401 S.E.2d 878, 882 (1991) (quoting *Le Lievre v. Gould*, 1 Q.B. 491, 497 (1893)).

In concluding that the Shipyard owes a duty of care to "those sharing living quarters" with its employees, the majority opinion relies on the general principle that

> Whenever one person is by circumstances placed in such a position with regard to another . . . that if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger of injury to the person or the property of the other, a duty arises to use ordinary care and skill to avoid such injury.

*RGR, LLC v. Settle*, 288 Va. 260, 276, 764 S.E.2d 8, 17 (2014) (alteration and citation omitted). Justice Holmes described a similar principle, the rule that a "defendant was bound to use such care as a prudent man would do under the circumstances," as a "featureless generality."  Oliver Wendell Holmes, Jr., The Common Law 100-01 (Paulo J. S. Pereira & Diego M. Beltran eds., 2011).  He asserted that it is the "business of the court[s]" to "formulate these [general] standards" into duties that arise in "specific circumstances," so that the law is "capable of being known" to the average person.  *Id.*

> If in the whole department of unintentional wrongs the courts arrived at no further utterance than the question of negligence, and left every case, without rudder or compass, to the jury, they would simply confess their inability to state a very large part of the law which they required the defendant to know, and would assert, by implication, that nothing could be learned by experience. But neither courts nor legislatures have ever stopped at that point.

16

*Id.* at 101.  The majority opinion holds that, based on general negligence principles, the Shipyard owed "a duty of ordinary care" to "those sharing living quarters" with workers the Shipyard exposed to asbestos.  This holding relies on a "featureless generality" instead of articulating a particular duty the Shipyard owed to the plaintiff.  It also abandons the Court's role in determining whether a duty exists by using a "vague test" instead of "defining the precautions to be taken" under the circumstances presented by this case. *Id.* at 101.

Additionally, the majority opinion conflates duty and proximate cause by relying on whether a defendant's conduct "create[s] a recognizable risk of harm" to determine whether a duty exists.  A "recognizable risk" is one that is foreseeable.  This Court relies on the foreseeability of harm to the plaintiff to determine proximate cause.  *See VEPCO v. Winesett*, 225 Va. 459, 468, 303 S.E.2d 868, 874 (1983) ("To establish proximate cause . . . the plaintiff must only show that 'a reasonably prudent person under similar circumstances ought to have anticipated that an injury might probably result from the negligent acts.'" (quoting *VEPCO v. Savoy Const. Co.*, 224 Va. 36, 46, 294 S.E.2d 811, 818 (1982)); *Wyatt v. Chesapeake & Potomac Tel. Co.*, 158 Va. 470, 477-78, 163 S.E. 370, 372 (1932) ("[I]n order to warrant a finding that negligence . . . is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."  (quoting *Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 475 (1877)).

Foreseeability is not a factor to be considered when examining whether a duty exists.  In the products liability context, we have observed that "'[f]oreseeability [of harm], it has been many times repeated, is not to be equated with duty."  *Holiday Motor Corp. v. Walters*, 292 Va. 461, 477, 790 S.E.2d 447, 478 (2016) (quoting *Dreisonstok v. Volkswagenwerk, A.G.*, 489 F.2d

17

1066, 1070 (4th Cir. 1974)) (alteration in original).  This is because "the purpose of making the finding of a legal duty as a prerequisite to a finding of negligence, or breach of implied warranty, in products liability is to avoid the extension of liability for every conceivably foreseeable accident."  *Id.* at 478, 790 S.E.2d at 455 (quoting *Jeld-Wen, Inc. v. Gamble*, 256 Va. 144, 149, 501 S.E.2d 393, 397 (1998)).  Accordingly, in *Holiday Motor Corp.*, we held that automobile manufacturers do not have a duty to design a convertible soft top that provides rollover protection because such protection is not an "intended or reasonably foreseeable use" of convertible soft tops, even though rollover accidents are "undoubtedly foreseeable."  *Id.* at 478, 482, 790 S.E.2d at 455, 458.

We have declined to recognize a duty in other cases despite the foreseeability of harm to the plaintiff as well.  For example, in *Gray v. Inova Health Care Services*, 257 Va. 597, 598, 514 S.E.2d 355, 355 (1999), we considered whether a hospital owed a duty to a mother who observed her daughter stop breathing during a medical procedure because she received an improper dose of medication.  While emotional harm to a mother is certainly foreseeable in these circumstances, we held that the hospital did not owe the mother a duty because she "was not the patient upon whom medical tests were being performed."  *Id.* at 599, 514 S.E.2d at 356.  *Holiday Motor Corp.* and *Gray* confirm that it is not proper to consider foreseeability when determining whether a duty exists.

The Supreme Court of Arizona recently clarified that "foreseeability is not a factor to be considered by courts when making determinations of duty."  *Quiroz v. Alcoa Inc.*, No. CV-16-0248-PR, 2018 Ariz. LEXIS 146, at *6 (Ariz. May 11, 2018).  The court "remov[ed] foreseeability from [its] duty framework" because "determining '[w]hether an injury to a particular plaintiff was foreseeable by a particular defendant necessarily involves an inquiry into

18

the specific facts of an individual case," and "[s]uch factual inquiries are reserved for the jury." *Id.* at *7 (quoting *Gipson v. Kasey*, 150 P.3d 228, 231 ¶ 16 (Ariz. 2007)). However, the court "did not completely remove foreseeability from [its] negligence framework." *Id.* at *8. Foreseeability remains a factor "in determining breach and causation" under Arizona law.[1] *Id.*

As in Arizona, "foreseeability [is] ordinarily [a] question[] for the jury" in Virginia. *Jordan v. Jordan*, 220 Va. 160, 162, 257 S.E.2d 761, 762 (1979). Because incorporating foreseeability into our duty framework will improperly require courts to engage in fact specific inquiries that are ordinarily reserved for juries, foreseeability should not be considered when

---

[1] The Supreme Court of Arizona in *Quiroz* declined to impose a duty on employers to protect the public, including those who cohabitate with their employees, "from off-site contact with [an] employee who may have been carrying asbestos fibers on [his] work clothes." *See id.* at *2. The court's reasoning was based in part on its jurisprudence holding that "foreseeability is not a factor in determining duty." *Id.*

Other courts have also declined to create a duty owed by employers to those who cohabitate with their employees. *See CSX Transp., Inc. v. Williams*, 608 S.E.2d 208, 210 (Ga. 2005) (holding "an employer does not owe a duty of care to a third-party, non-employee, who comes into contact with its employee's asbestos-tainted work clothing at locations away from the workplace" in part because the duty to provide a safe workplace does not extend to persons outside the workplace.); *Holdampf v. A.C. & S., Inc.*, 840 N.E.2d 115, 119-23 (N.Y. 2005) (declining to recognize a duty owed by an employer to prevent asbestos exposure that occurred outside an employer's premises because foreseeability "does not define duty" and there was no relationship between the employer and the employee's wife); *Gillen v. Boeing Co.*, 40 F. Supp. 3d 534, 539 (E.D. Pa. 2014) (holding an employer does not owe a duty to protect against the dangers asbestos dust carried home on an employee's clothes may pose to an employee's family members in part because "foreseeability 'is not alone determinative of the duty question,' and 'is not necessarily a dominant factor' in the duty assessment under Pennsylvania law." (citation omitted)); *Cf. Miller v. Ford Motor Co.*, 740 N.W.2d 206, 209-10 (Mich. 2007) (holding the owner of "property on which asbestos-containing products were located did not owe [the plaintiff], who was never on or near that property, a legal duty to protect her from exposure to any asbestos fibers carried home on the clothing of a member of her household who was working on that property as the employee of independent contractors, where there was no further relationship between defendant and [the plaintiff]."); *Van Fossen v. MidAmerican Energy Co.*, 777 N.W.2d 689, 691 (Iowa 2009); (concluding the owners of a power plant owed no duty to warn the spouse of an independent contractor's employee, who never visited the power plant, of the health risks posed by asbestos exposure).

determining whether a duty exists. Recognizing that foreseeability does not underlie our analysis of duty will not eliminate this concept from our negligence framework, as its centrality to our analysis of proximate cause will continue.

At common law, employees constituted the class of persons to which an employer owed a duty to provide a reasonably safe workplace. *Swift & Co. v. Hatton*, 124 Va. 426, 435, 97 S.E. 788, 791 (1919) ("[T]he master is under an absolute obligation – is charged with a non-assignable duty – to use due care in providing and maintaining a reasonably safe environment for his servants while engaged in their work.") We have never extended this duty to those cohabitating with an employee. Traditionally, this Court has exercised great restraint in recognizing a duty that did not exist at common law. *See, e.g.*, *Cline v. Dunlora South, LLC*, 284 Va. 102, 110, 726 S.E.2d 14, 18 (2012) (declining to "impose a duty upon landowners to protect individuals traveling on an adjoining public highway from natural conditions on the landowner's property," in part, because "no such duty existed under relevant English common law"); *Chesapeake & Potomac Tel. Co. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 754 (1988) ("[T]here is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here."); *Williamson v. Old Brogue, Inc.*, 232 Va. 350, 354, 350 S.E.2d 621, 624 (1986) (declining to abrogate the common law rule against dram shop liability because "abrogat[ing] such a fundamental rule . . . is the function of the legislative, not judicial, branch of government").

Additionally, the creation of a duty in this case upsets the careful balance struck by the legislature in the Workers' Compensation Act. The Act "is based upon a quid pro quo, a societal exchange wherein employees are provided a purely statutory form of compensation for industrial injuries" that is "modest, but relatively certain." *Roller v. Basic Constr. Co.*, 238 Va. 321, 327,

20

384 S.E.2d 323, 325 (1989). "In exchange, employers under the canopy of the Act are sheltered from common-law liability in tort." *Id.*

The complaint alleges that the Shipyard exposed Wanda's father, its employee, to asbestos during the course of his work. He then carried asbestos fibers home on his clothes, allegedly causing Wanda's exposure to asbestos. Because Wanda's exposure occurred as a result of her father's exposure, she was a bystander, who was injured as a consequence of an employer's tort against its employee. Holding that the Shipyard owed Wanda a duty permits a negligence action by a non-employee through the conduit of an employee who, under the Act, has no right to bring a negligence action against his employer. Given the policy considerations presented by allowing such tort actions, the legislative, not judicial, branch of government should determine whether those who cohabitate with employees can recover in tort under these circumstances.

We have said that where "the issue involves many competing economic, societal, and policy considerations, legislative procedures and safeguards are particularly appropriate to the task of fashioning an appropriate change, if any, to the settled rule." *Williamson*, 232 Va. at 354, 350 S.E.2d at 624.

> A legislative change in the law is initiated by introduction of a bill which serves as public notice to all concerned. The legislature serves as a forum for witnesses representing interests directly affected by the decision. The issue is tried and tested in the crucible of public debate. The decision reached by the chosen representatives of the people reflects the will of the body politic.

*Id.* (quoting *Bruce Farms v. Coupe*, 219 Va. 287, 293, 247 S.E.2d 400, 404 (1978)). By promulgating the Act, the legislature determined that employees should receive "modest, but relatively certain" compensation for injuries "arising out of and in the course of employment," in exchange for foregoing the compensation they could receive for prevailing in a negligence

21

action. *Roller*, 238 Va. at 327, 384 S.E.2d at 325; Code § 65.2-400. The majority opinion's creation of a duty that was not recognized at common law interferes with the "quid pro quo" of the Act by allowing those who cohabitate with employees to bring a negligence action that an employee is barred from bringing under the Act. It is debatable whether allowing such actions is sound public policy, but it is beyond dispute that imposing a duty on employers to protect those who cohabitate with their employees is a major policy decision.

A change of this magnitude should be accomplished by an act of the legislature, not by a judicial pronouncement. The Act defines the scope of employers' liability for workplace injuries, and the legislature should determine whether this scope should be expanded. The legislatures of two states have promulgated statutes that bar recovery for injuries arising from asbestos exposure that occurs outside of a property owner's premises.[2]

The duty created by the majority today is limitless. The majority opinion does not propose any framework for limiting an employer's duty to those who share living quarters with its employees. In declining to recognize a common law duty owed by employers to those exposed to asbestos outside the employer's premises, the Supreme Court of Georgia observed that such a duty would "expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs." *CSX Transp.*, 608 S.E.2d at 209 (citation omitted).

---

[2] Kan. Stat. Ann. § 60-4905(a) ("No premises owner shall be liable for any injury to any individual resulting from silica or asbestos exposure unless such individual's alleged exposure occurred while the individual was at or near the premises owner's property."); Ohio Rev. Code Ann. § 2307.941(A)(1) ("A premises owner is not liable for any injury to any individual resulting from asbestos exposure unless that individual's alleged exposure occurred while the individual was at the premises owner's property.").

22

Expanding civil liability in this manner will push a wave of indeterminacy into the Commonwealth's reputation for stable and predictable tort law. At its most basic level, the majority's innovation violates the first premise of the common law — that any judicially applied "legal standard must, in theory, be capable of being known." Holmes, *supra*, at 100. "When a man has to pay damage, he is *supposed* to have broken the law, and he is further *supposed* to have known what the law was." *Id.* (emphases added). Only "fixed and uniform standards" of liability make either of those suppositions legitimate. *Id.* The majority's unprecedented expansion of tort liability in this case could not have been known by anyone, with any degree of confidence, prior to today — not in 1950, when Quisenberry claims the Shipyard began breaching its putative duty to her, or in 1969, when the alleged breach ended.

Our Commonwealth cannot prosper when demarcations between liable and non-liable conduct remain in flux because of judicially recognized standards of liability that are as novel as they are unpredictable. How will businesses calculate risk and confidently make informed decisions in light of such unpredictability? Our emphatic duty "to say *what the law is*," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added), after all, implicitly forbids us from saying *what the law should be* according to our predilections. "From the time of Alfred to the present day, statutes and decisions have busied themselves with defining the precautions to be taken in certain familiar cases; that is, with *substituting for the vague test of the care* exercised by a prudent man, *a precise one of specific acts or omissions*." Holmes, *supra*, at 101.

Before today, no one could have predicted that an employer owed a legal "take home" duty to a non-employee based solely on a tort committed by an employer against an employee, occurring at the employer's work site, and arising out of and in the course of the employer's

23

work. To make matters worse, after today, no one will be able to predict who else among the host of possible targets will be subjected to this novel theory of liability.

Historically, this Court has been reluctant to recognize a duty that did not exist at common law. Historically, this Court has deferred to the legislature when such a broad new cause of action is proposed. Historically, this Court has recognized that creating new causes of action and extending liability beyond anticipated limits has enormous financial implications.

The majority opinion is unprecedented in Virginia law.

I respectfully dissent.

JUSTICE McCLANAHAN, with whom CHIEF JUSTICE LEMONS and JUSTICE KELSEY join, dissenting.

I fully agree with Chief Justice Lemons and join his cogent dissent. As the Chief Justice writes, neither this Court's precedent nor the public policy of Virginia supports the existence of a duty owed by the Shipyard to individuals who share living quarters with the Shipyard's employees.

I write separately to emphasize that the principles governing the liability of owners and occupants of land underlying this Court's decision in *RGR, LLC v. Settle*, 288 Va. 260, 764 S.E.2d 8 (2014), are inapplicable to this case. Even so, no duty arises under application of the *RGR* analysis since Wanda and the Shipyard *were not juxtaposed in time and space to place Wanda within a given area of danger* – the determining test for existence of duty adopted in *RGR*. Given the obvious difficulty in applying principles of landowner liability to the allegations in this case, the majority invokes the principle of foreseeability of harm as the source of duty. As a result, the majority reaches a decision that has no basis under this Court's established duty jurisprudence.

24

I.

The majority's reliance on *RGR* is misplaced because this case is premised on a duty owed to Wanda arising from the Shipyard's employment of her father, not on a duty arising from the ownership or occupation of land.

In *RGR,* a wrongful death action arising out of a collision between a vehicle and a train at a private railroad crossing, this Court held that RGR, the owner of a business occupying the premises adjacent to land on which the crossing was located, owed a duty to maintain the sight line for motorists, such as Settle, who used the crossing. The Court's imposition of a duty upon RGR was based on the common law tort principle applicable to owners and occupants of real property that "every person [must] exercise ordinary care in the use and maintenance of his own property to prevent injury to others." 288 Va. at 276, 764 S.E.2d at 17. As the Court explained, Settle alleged that RGR "'owed a duty of reasonable due care' to Settle 'in the care, maintenance, upkeep, [and] inspection' of both [the railroad]'s right-of-way and the property upon which the lumber was stacked" and that it breached these duties to Settle by "allowing . . . stacks of lumber to exist such that they blocked the view of motorists approaching the [railroad] [c]rossing." *Id.* The Court held that the circuit court properly instructed the jury that "[e]very person has the duty to exercise ordinary care in the use and maintenance of its property to prevent injury or death to others." *Id*. at 278, 764 S.E.2d at 18.

The Court's reliance in *RGR* on the duties owed by owners and occupants of land for conditions existing on the land is further illustrated by the Court's explanation that "[a]t common law, however, this duty did not extend to natural conditions existing on land as opposed to artificial conditions such as RGR's lumber stacks." *Id.* at 277, 764 S.E.2d at 17. The Court contrasted the case before it involving the artificial condition of RGR's lumber stacks with

25

numerous cases finding no duty owed by landowners to motorists on adjacent highways with regard to natural conditions on the land. *Id.* at 277-78, 764 S.E.2d at 17-18.

In contrast, the plaintiff's allegations of negligence in this case are based on a duty the Shipyard allegedly owed to Wanda arising from the Shipyard's employment of her father. Specifically, plaintiff alleges that the Shipyard: (a) failed to adequately or sufficiently warn its employees not to wear their work clothes home; (b) failed to educate Wanda's father regarding reasonably safe and sufficient safeguards to prevent contaminating his work clothes; (c) failed to provide a locker room, showers, and/or laundry service for employees; (d) failed to take reasonable and sufficient precautions to instruct Wanda's father about proper and safe handling of products containing asbestos; (e) failed to educate Wanda's father about the dangers of wearing his work clothes home; and (f) failed to follow or adhere to various state and U.S. Government laws and guidelines pertaining to preventing contamination of employees' homes with asbestos fibers. These alleged acts of negligence are based on duties purportedly arising from the Shipyard's employment relationship with Wanda's father, not on duties an owner or occupant of land owes to "others in the vicinity" of its land. *Id.* at 276, 764 S.E.2d at 17 (quoting W. Page Keeton, et al., Prosser & Keeton on Torts, § 57, at 386 (5th ed. 1984)).[1]

---

[1] Similarly, the principles governing the rights and duties of riparian owners and liability for maintenance of a private nuisance have no application here. Plaintiff is not alleging any violation of rights of a swimmer or lower riparian owner. *See Shoffner v. Sutherland*, 111 Va. 298, 300, 68 S.E. 996 (1910) (stating that "any use of a stream that materially fouls and adulterates the water . . . that so far affects the water as to impair its value for the ordinary purposes of life, will constitute a nuisance . . . for which a lower riparian owner injured thereby is entitled to redress"). Plaintiff is also not alleging that the Shipyard's operations constituted a nuisance to neighboring properties. *See National Energy Corp. v. O'Quinn*, 223 Va. 83, 85, 286 S.E.2d 181, 182 (1982) (stating that "[w]hen a business enterprise, even though lawful, becomes obnoxious to occupants of neighboring dwellings and renders enjoyment of the structures uncomfortable by virtue of, for example, smoke, cinders, dust, noise, offensive odors, or noxious gases, the operation of such business is a nuisance").

26

II.

Setting aside the majority's misplaced reliance on *RGR* and other cases premised on landowner liability, it makes only a half-hearted effort to apply the *RGR* analysis. This is not surprising since no "take home" duty exists under a straightforward application of the *RGR* analysis.

In *RGR*, the Court rejected RGR's assertion that plaintiff prove the existence of a "particular relationship" between RGR and Settle, and explained that the "only relationship which must exist is a sufficient juxtaposition[2] of the parties in time and space" to place motorists "'within a given area of danger' created by the location of RGR's lumber stacks." *RGR*, 288 Va. at 279-80, 764 S.E.2d at 19 (citation omitted). The Court concluded that the parties were sufficiently juxtaposed in time and space because RGR's lumber stacks were "situated within [the railroad]'s right-of-way and obstructed the sight line of motorists on [a particular roadway] as they approached the railroad crossing." *Id.* at 280, 764 S.E.2d at 19. The Court specifically noted that Settle was within this "given area of danger" because he was traveling "within feet of RGR's lumber stacks at the time of the accident." *Id.*

Applying the *RGR* analysis here, it is clear that no duty was imposed upon the Shipyard to protect a non-employee family member such as Wanda from conditions created by the Shipyard's business operations because the parties were *not* juxtaposed in time and space to place Wanda within a given area of danger. In *RGR*, this requirement was satisfied because RGR's lumber stacks were situated within Norfolk Southern's right-of-way, the lumber obstructed the sight line of motorists such as Settle using the railroad crossing, and Settle was

---

[2] The ordinary meaning of "juxtaposed" is "placed side by side." Webster's Third New International Dictionary 1229 (1993). The synonym for juxtaposed is "adjacent." *Id.*

27

"within feet of RGR's lumber stacks" when the accident occurred. *Id.* Here, there is no allegation that Wanda was in close spatial proximity to the Shipyard or its business.

Although the majority states that "juxtaposition of time and space" does not require actual interaction between the parties, that assertion – even if true – entirely misses the point that the "sufficient juxtaposition of the parties in time and space" requires, at the very least, that the injured party be "in the vicinity" of the land. *Id.* at 276, 764 S.E.2d at 17 (quoting W. Page Keeton, et al., Prosser & Keeton on Torts, § 57, at 386 (5th ed. 1984) (stating that the duty to others affected by the use of the land recognizes that "[t]he possessor's right is therefore bounded by principles of reasonableness, so as to cause no unreasonable risk of harm *to others in the vicinity*" of the land). In point of fact, the Court in *RGR* held that the injured party need only be in close spatial proximity to the danger created by the occupant of land in direct response to RGR's assertion that Settle was on another entity's property when the collision occurred.

The majority's holding in the present case that the requirement is satisfied here since the asbestos fibers "moved" from the Shipyard's business to Wanda's home ignores the very premise on which the liability of RGR was based – that Settle and RGR were juxtaposed in time and space because Settle was "within feet of RGR's lumber stacks" when the accident occurred. *Id.* at 280, 764 S.E.2d at 19.[3] Indeed, the suggestion that individual "zones of danger" followed

---

[3] The majority introduces the notion of a "mobile hazard" in an effort to satisfy this requirement. In particular, the majority compares the Shipyard's duty to protect individuals who cohabitate with its employees to a landowner's duty to prevent his farm animals from escaping the boundaries of his land onto a public highway, *see Rice v. Turner*, 191 Va. 601, 605, 62 S.E.2d 24, 26 (1950). As explained previously, the duties imposed on the owners and occupants of land have no application to this case. Furthermore, I find the comparison of a farm animal, subject to its owner's restraint and control, to a human being, endowed with free will, to be injudicious, as I do the designation of the Shipyard's employee as a "mobile hazard." I do not believe we should recognize a new tort duty based on this specious comparison.

the Shipyard's employees to their respective homes is antithetical to the principles underlying landowner liability.

## III.

Dismissing the requirement of a sufficient juxtaposition of the parties in time and space, which was central to the analysis in *RGR*, the majority relies on a "recognizable risk of harm," i.e., foreseeability of harm, as the source of duty in this case. This is in direct contravention of this Court's holding in *RGR* that the question of duty *does not* depend on foreseeability of harm.

In *RGR*, the Court made a clear distinction between the question of whether a duty existed and the question of foreseeability of harm. As the Court stated, "[a]ctionable negligence requires that there must be a legal duty, a breach thereof and a consequent injury which could have been reasonably foreseen by the exercise of reasonable care and prudence." *Id.* at 281, 764 S.E.2d at 19 (citation omitted). The Court explained that foreseeability "pertains to what constitutes negligence, not to whether a duty to exercise ordinary care exists." *Id.*[4] In other words, "[w]hether reasonable care was exercised depends upon what a reasonably prudent person, with knowledge of the circumstances, ought to have foreseen in regard to the

_____

[4] Our cases have treated the issue of foreseeability of harm variably as a factor in determining proximate cause and a factor in determining breach of duty. *Compare Wyatt v. Chesapeake & Potomac Tel. Co.*, 158 Va. 470, 477-78, 163 S.E. 370, 372 (1932) (noting that "in order to warrant a finding that negligence . . . is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances") *with Limberg v. Lent*, 206 Va. 425, 426, 143 S.E.2d 872, 873 (1965) (noting that "the defendant did not fail to observe a duty owed . . . if it was reasonably foreseeable that the defendant's actions might cause injury"). Our cases have consistently treated the issue of foreseeability of harm as distinct from the determination of the existence of a legal duty *vel non*.

Furthermore, while the absence of foreseeable harm may *defeat* a potential duty to protect against third party conduct arising from a special relationship, it does not give rise to such a duty, which is premised on the relationship between the parties. *See, e.g., Commonwealth v. Peterson*, 286 Va. 349, 357-59, 749 S.E.2d 307, 311-12 (2013).

consequences of his act or omission." *Id.* Thus, "whether RGR breached its duty of ordinary care by stacking its lumber within Norfolk Southern's right-of-way because it was reasonably foreseeable that [its] actions might cause injury, *must be distinguished from the question whether a duty existed*." *Id.* (citation omitted) (emphasis added).

The Court elaborated on this distinction between the question of duty and the question of foreseeability of harm in response to RGR's argument that it owed no duty to Settle because it possessed no knowledge that the lumber stacks created a dangerous condition to motorists using the railroad crossing. And the Court specifically rejected RGR's argument because its *knowledge of the danger pertained to foreseeability not whether it owed a duty to Settle. See id.*

We reiterated the distinction made in *RGR* between foreseeability of harm and existence of duty in *Holiday Motor Corp. v. Walters*, 292 Va. 461, 478, 790 S.E.2d 447, 455 (2016). In *Holiday Motor*, we held that the determination of duty with regard to design of a convertible soft top required that we consider its *reasonably foreseeable use*. Specifically, we stated that "[t]he determination of whether a vehicle manufacturer owes a duty to design a convertible soft top to provide occupant rollover protection, therefore, requires that we consider whether such protection *is the intended or reasonably foreseeable use* given the inherent characteristics, market purposes, and utility of a convertible soft top." *Id.* (emphasis added). We *did not consider the foreseeability of harm* in determination of the duty to design the product and instead cautioned that while "the possibility that a convertible may be involved in a rollover accident is undoubtedly foreseeable," foreseeability of harm "is not to be equated with duty." *Id.*

Here, the majority holds that a duty was imposed upon the Shipyard to avoid injury to Wanda from exposure to asbestos fibers because its conduct "created a 'recognizable risk of harm' to those sharing living quarters with the workers." This is precisely the opposite of how

30

the Court approached the duty analysis in *RGR*, where the Court recognized that the duty was owed because Settle was traveling "within feet of RGR's lumber stacks" so as to be physically placed within this "given area of danger." *Id.* at 280, 764 S.E.2d at 19. The Court in *RGR* expressly stated that whether the risk to a motorist, such as Settle, was reasonably foreseeable was a separate question that "must be distinguished from the question whether a duty existed." *Id.* at 282, 764 S.E.2d at 20.

Our decision in *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 241 Va. 270, 401 S.E.2d 878 (1991) does not justify the majority's reliance on foreseeability of harm for the source of duty but rather undermines it. In *Dudley*, we held that the private operator of a "halfway house" for convicted felons had a special relationship with its clients, giving rise to a potential duty of care to control its clients' actions. As in all actions premised on a duty to protect against third party conduct, the absence of foreseeable harm may *defeat* a potential duty to protect against third party conduct arising from a special relationship. *See, e.g., Commonwealth v. Peterson*, 286 Va. 349, 357-59, 749 S.E.2d 307, 311-12 (2013). Foreseeability of harm does not give rise to such a duty; the existence of a duty is premised on the relationship between the parties.

The majority's reliance on foreseeability of harm as the source of duty in this case is accompanied by its astonishing claim that "the common law has recognized *some exceptions to duty arising from foreseeable harm*." (Emphasis added.) In Virginia, there is no duty arising from foreseeable harm. The majority's holding otherwise is in direct conflict with our established precedent, specifically including this Court's recent decisions in *RGR* and *Holiday Motors*.

31

IV.

None of the principles invoked by the majority give rise to any duty owed by an employer to individuals cohabitating with its employees.  The principles governing liability of landowners and occupants of land do not give rise to such a duty.  The principles governing the liability of riparian owners do not give rise to such a duty.  And the principles governing liability for the maintenance of private nuisances do not give rise to such a duty.  Furthermore, the majority's reliance on the principle of foreseeability of harm as the source of such duty contravenes this Court's admonition that foreseeability of harm "*must be distinguished from the question whether a duty existed*."  *RGR*, 288 Va. at 281, 764 S.E.2d at 19 (citation omitted) (emphasis added).

In short, the take-home duty recognized today by the majority is a newly created duty imposed as the basis for a newly created cause of action that is wholly unsupported by our precedent.[5]

---

[5] In addition to holding that an employer owes a duty to an employee's family member who alleges exposure to asbestos from the work clothes of the employee, the majority notes that the pleadings support plaintiff's count alleging gross negligence, willful, and/or wanton conduct. The sufficiency of the allegations to support plaintiff's claim for punitive damages is not before this Court.